CHARLES FRITZ, Plaintiff, *v.* JULIUS KRASNE and Others, Defendants.*

Supreme Court, Trial Term, New York County, December 21, 1935.

*H. Miller [Frank Herwig* of counsel], for the plaintiff.

*Ireland, Caverly & Hendrickson [Bert W. Hendrickson* of counsel], for the defendants.

CHURCH, J. This action was brought to recover damages for personal injuries claimed to have been suffered as the result of the negligent operation of an automobile by the defendant Samuel Chertok. The complaint alleges that the defendants Julius Krasne, Benjamin Krasne and Israel Krasne had charge, care and management of the automobile, and that at the time of the accident it

* Affd., 248 App. Div. 573.

was operated by the defendant Samuel Chertok, who will be called the operator, for and on behalf of the defendants Krasne Brothers, who will be called the partnership.

The first trial of the action resulted in a verdict for the plaintiff for the sum of $15,000 against the operator and a dismissal of the complaint as against the partnership. Thereafter the honorable trial justice granted a motion severing the action as against the operator and directing a new hearing, on the ground of newly-discovered evidence, to determine the liability of the partnership. On the new hearing the testimony disclosed that the operator of the car was a salesman of the partnership, who was not paid any salary, who had no drawing account, but received fifty per cent of the profits of the sales that he made, the losses being deducted at the end of every year. With regard to losses he testified that the partnership deducted every week from the salesman's account five dollars as a fund against losses, and if the salesman's share of the losses exceeded $260, that was deducted from his pay check at the end of the year, or he paid the partnership by check or cash balance, and if any part of the $260 was due him the partnership would reimburse him.

The operator testified that he collected accounts for the partnership, but only from his own customers or from persons who upon such collection became his customers. With regard to his work, the operator testified that he was not limited to any locality in his activities as salesman; that he could pick out any customer providing that the customer did not buy from the partnership through another salesman; that where he went in the course of a day or upon whom he called was a matter on which he exercised his own judgment, and that he decided the routes he would take or where he would go at the particular time of day. He testified that at the time of the accident, which happened at about nine-thirty P. M., he was returning home, and that on his way home he dropped his orders off at the office of the partnership, although the office closed at six P. M., and there was nobody there but the night watchman. On a prior examination taken on behalf of the plaintiff, he testified that he was returning to his home directly from the last call on a customer which he had made at Far Rockaway. The office was at a point between Far Rockaway and his home. The route taken by the operator on the night of the accident had been suggested by one of the members of the partnership as the best route to their office from the residence of such member at Belle Harbor, but the operator had the freedom of choice as to all routes in calling upon customers.

The operator testified that when he started to work for the partnership he did not own an automobile; that some time in and about the year 1929 the members of the partnership called a meeting of their salesmen, among whom was the operator, and in words or in substance suggested to them that they get cars because the salesmen of competitors had cars. The partnership told the salesmen further that in order to enable them to purchase automobiles the partnership would pay for the automobile and that the salesmen could repay them at a time convenient to them. The partnership further advised the salesmen to buy the cars and to buy them in their own names, and it was decided that it would require a down payment of $300, which the partnership then agreed to advance to the salesman.

The automobile involved in the accident was registered with the State Motor Vehicle Bureau in the name of the operator. It was purchased by the operator, in trading in his used car, with funds loaned by the firm, which loan was repaid by the operator. There was no lien or chattel mortgage on the car at any time for the amount of the car. The car was the third one which had been purchased by the operator after the suggestion from the partnership that the salesmen could increase their earnings by having cars rather than calling on the trade on foot. The car was covered by a public liability insurance policy (Plaintiff's Exhibit No. 2), in which the named assured were " Krasne Bros.— see schedule attached — copartnership and individuals." The schedule attached, among other automobiles, included the operator's car: " Trade Name — Dodge; Type of Model — 4 Door Sedan; Year Model — 1933; Factory No.— M-DP-97918, S-3667879; Name of Assured — Samuel Chertok; Automobile principally garaged and used, New York, New York." There was also another public liability insurance policy (Plaintiff's Exhibit 3), in which the named assured were " Krasne Bros.— Copartnership." By indorsement the policy also provided: " It is hereby understood and agreed in so far as concerns accidents occurring on and between the effective date of this endorsement and the end of the policy period, that the below described employees are included on non-partnership automobile indorsement Class I, Form 5405A  *  *  *  Name of employee * * * S. Chertok * * * headquarters N. Y. N. Y." The premiums on the insurance policies were paid by the partnership and fifty per cent of the premiums in monthly installments was deducted from the compensation of the salesmen.

The operator himself paid for garaging, repairs, oil and gas in the operation of the car, and also used the car for pleasure purposes. The partnership did not ever control or direct in any way

the operation of the car, nor did they ever pay the operator any expense money for the upkeep or maintenance of it. It does not appear that any person connected with the partnership ever gave, or reserved the right to give, the operator any directions with reference to the manner in which he was to do his work.

Under the foregoing facts, there seem to be no controlling authorities in this State. The cases of *Brown* v. *Steamship Terminal Operating Corporation* (267 N. Y. 83) and *Witaszek* v. *Drees* (155 Misc. 838) arose from circumstances which are not presented by the evidence in this litigation. Under the facts of the case at bar, the operator at the time of the accident in the operation of the car was an independent contractor, and the relation of master and servant did not exist between the partnership and the operator, and the accident did not occur in the course of the employment of the operator. (See *Hexamer* v. *Webb,* 101 N. Y. 377; *Pyyny* v. *Loose-Wiles Biscuit Co.,* 253 Mass. 574; 149 N. E. 541; *Luff Co.* v. *Capece,* [C. C. A. 6th Cir.] 61 F. [2d] 635.)

Verdict and judgment are directed for Julius Krasne, Benjamin Krasne and Israel Krasne against the plaintiff, and the complaint dismissed as to them, with exception to the plaintiff.