Joseph O'Loughlin, Respondent, *v.* John Mackey and Edward F. Kelly, Defendants, Impleaded with Ann Kelly, Appellant.

Second Department, March 28, 1918.

**Motor vehicles — negligence — injury to pedestrian by employee driving borrowed automobile — when employer not liable — driving of car by person not licensed as chauffeur.**

An employer is not liable for personal injuries caused by an employee who, while driving a borrowed automobile, ran into a pedestrian on the street where it appears that he was never employed to drive a motor car, was not a licensed chauffeur and the car was not owned or furnished by the defendant, who had no knowledge that it was being used by the employee, there being nothing which made it necessary for him to drive the car.

Where a servant is engaged within the scope of his employment, and while so engaged adopts means reasonably directed to the end which result in injury to another, the master is answerable, but in the case at bar the means adopted were not reasonable, for the use of an automobile by one who is not a licensed chauffeur was not the adoption of such means to do his work as will be binding upon his master.

As the facts are not in conflict, or subject to opposing inferences, the complaint should be dismissed.

Appeal by the defendant, Ann Kelly, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 22d day of November, 1917, upon the verdict of a jury for $775, and also from an order entered in said clerk's office on the 12th day of December, 1917, denying appellant's motion for a new trial made upon the minutes.

The court dismissed the complaint as to the defendant Edward F. Kelly.

Plaintiff sued for injuries from an automobile which struck him while he was standing on the sidewalk at the corner of Washington and Watt streets, Manhattan, on February 17, 1917. The appellant conducted a general trucking business under the name of the " Estate of Edward F. Kelly," with various trucks, in and about the city of New York. John Mackey was employed by her to follow up such trucks, give the drivers the bills of lading and then see to the receipt and delivery of the

goods. It was testified that Mackey sometimes used a horse and buggy, other times traveled by street cars, and that he was allowed to select the means to go over his routes; also that prior to this occurrence the employer had paid bills for the hire of automobiles for Mackey and for other foremen. At such times a chauffeur drove the automobile, as Mackey himself had never driven an automobile in connection with such employment.

On the day in question Mackey left defendant's office in Greenpoint about noon. Going out, he met Robert Salkin, defendant Kelly's private chauffeur. Salkin had borrowed a Ford automobile belonging to one Gustave Selner to use in going over to New York. Salkin drove Mackey in this machine over to pier 32, North river. There, Mackey asked Salkin to go on the dock to look up some freight, which Salkin agreed to do, leaving Mackey in the machine. Mackey then assumed to drive the machine through West street to Desbrosses street and up Desbrosses street to Washington street, where he stopped to speak to some of the appellant's drivers. As he started up again, he drove the machine on the sidewalk at the corner of Washington and Watt streets, striking plaintiff and inflicting the injuries for which he brought this suit.

Plaintiff had a verdict and judgment against the defendants from which Ann Kelly has appealed.

*James T. Hallinan* [*Theodore J. Groh* and *Joseph P. Barbieri* with him on the brief], for the appellant.

*Sherwood O. Chichester*, for the respondent.

PUTNAM, J.:

Mackey was never employed by defendant Kelly to drive a motor car. He was not a licensed chauffeur. He had, however, previously driven a Ford car, but it did not appear how often he had done so. Appellant did not own this car. She did not furnish it to Mackey. She did not authorize him to run it, or even know it was being used by Mackey.

Where a servant is engaged in pursuing or carrying through something within the scope of his employment, and while so engaged adopts means reasonably directed to the end,

which result in injury to another, the master is answerable for the consequences. But the means here adopted were not reasonable. The use of an automobile, with the danger of its operation by one who was not a licensed chauffeur, was not the adoption of such means to do his work as would be binding upon his master. In *Limpus* v. *London General Omnibus Co.* (1 H. & C. 526) it was said by BLACKBURN, J.: " It is not universally true that every act done for the interest of the master is done in the course of the employment. A footman might think it for the interest of his master to drive the coach, but no one could say that it was within the scope of the footman's employment, and that the master would be liable for damage resulting from the wilful act of the footman in taking charge of the horses."

While sometimes an automobile had been furnished Mackey as a means of transportation, it stands uncontradicted that a chauffeur was also always provided by his employer, and Mackey himself admitted that in his duties he never before had driven a machine and was not authorized by his principal so to do. So far as the record discloses, it was not necessary for him to drive this car, and, in view of his not being a licensed chauffeur, it was an unnatural thing for him to do. His act was without the knowledge or request of appellant Kelly, for which she is not responsible. (*Wilson* v. *Pennsylvania R. R. Co.*, 63 N. J. L. 385.) There a man who had habitually carried mail in a small push-cart, attempted, without authority, to drive an Adams Express wagon, injuring plaintiff. It was held that plaintiff should have been nonsuited.

In *Goodman* v. *Kennell* (1 Moore & P. 241 [1828]) one occasionally employed by defendant to do errands, when sent with a book, took a horse, without the express consent or knowledge of defendant, and while thus riding ran down plaintiff. Both PARK and BEST, JJ., admitted that in such case the master would not be liable. BEST, J., said: " It has been truly said, that a servant's riding the horse of another, without the assent or authority of his master, cannot render the latter answerable for his acts." (See Labatt [2d ed.], § 2282; *Driscoll* v. *Scanlon*, 165 Mass. 348.)

Plaintiff failed to support the burden imposed on him,

of showing that Mackey's act was within the scope of any implied authority. To hold appellant liable from the facts here adduced, would extend the rule so as to make a master responsible for every act of the servant while in the master's employ, with the result that the master would become an insurer.

I recommend, therefore, to reverse. As the facts as to the appellant are not in conflict, and not subject to opposing inferences, as to her I think the complaint should be dismissed, with costs.

Present — Jenks, P. J., Thomas, Mills and Rich, JJ.

Judgment and order reversed and complaint unanimously dismissed as to the appellant Ann Kelly, with costs.