## KENNEDY v. LOUISIANA STORES CO., Inc.

### No. 5729.

Court of Appeal of Louisiana. Second Circuit.

Feb. 6, 1939.

Brunswig Sholars and James H. Dormon, both of Monroe, for appellant.

Fink & Fink, of Monroe, for appellee.

DREW, Judge.

Plaintiff instituted this suit against the Louisiana Stores Company, Incorporated, the Lee-Rogers Chevrolet Company, Incorporated, Eugene Windes and Jack St. John for damages for personal injuries alleged to have been sustained by him as the result of an automobile collision which occurred on or about May 14, 1937, between cars driven by Eugene Windes and Jack St. John. His cause of action against St. John and Windes is predicated upon the combined negligence of those two persons in the operation of the respective automobiles they were driving at the time.

Plaintiff seeks to recover from the Louisiana Stores Company, Inc., and Lee-Rogers Chevrolet Company, Inc., under the doctrine of respondent superior, alleging that St. John was acting in the scope of his employment and was at the time on a mission for his master, the Louisiana Stores Company, Inc., and that Windes was doing the same for his employer, the Lee-Rogers Chevrolet Company, Inc.

Exceptions of no cause of action were filed by all defendants except St. John. They were tried and overruled by the lower court and are not urged here.

All of the defendants answered except St. John who, on the day of trial, filed a plea of minority which was tried and sustained, dismissing the suit as to him. There is no appeal from this ruling.

At the close of plaintiff's case, the suits against Eugene Windes and the Lee-Rogers Chevrolet Company, Inc., were abandoned. They therefore passed out of the case and we are now concerned only with the one against the Louisiana Stores Company, Inc. Its answer was a denial of each and every article of plaintiff's petition. The lower court rejected plaintiff's demands and he prosecutes this appeal.

Plaintiff was a guest in the car driven by Windes at the time the automobile operated by St. John ran into it and inflicted injuries to plaintiff. It is conceded that the negligence of St. John was the sole proximate cause of the accident, therefore, no discussion of that point is necessary.

The sole questions to determine are:

Was St. John at the time acting within the scope of his employment and was he on a mission for defendant, his employer? The questions will be dealt with by us as one.

Defendant operates a chain of cash and carry grocery stores in and near Monroe, Louisiana, and they are operated under the trade name of "Jitney Jungle". It maintains five such stores and they are numbered from 1 to 5. For the purpose of supplying these stores with goods and produce to sell, it operates a general warehouse. Mr. E. M. Steen is president and general manager of all the stores; Mr. D. E. Bourgeois was office manager and in charge of the warehouse; and Mr. H. M. Branch the purchasing agent who does the buying for all the stores. No other employee of defendant company is authorized to purchase anything. When the retail stores need to have their stock replenished, all that is necessary is that Mr. Branch be called on the telephone and given the order. He in turn has the manager of the warehouse to supply the goods ordered from the general warehouse or, if the order cannot be filled from the warehouse, Mr. Branch purchases the required goods or produce from some wholesale house and sends it to the store. We think the record is clear that no one else connected with the business has any authority to purchase goods or produce for the stores for resale.

The defendant company makes no deliveries and owns no truck or cars, other than those necessary to transport goods from its general warehouse to the five retail stores. The record also discloses that all employees had been instructed never to use any personal car for any business of the defendant company. The employees of these stores are only clerks authorized to sell goods, collect the money, and see that the stock is kept up by giving orders to the purchasing agent.

Jack St. John, a minor, had been employed by the defendant company for about six years. At the time of the accident sued on here, he was employed as a checking clerk and cashier at store No. 5. He was not authorized to do anything else and clearly was not empowered to make purchases for the store. St. John testified that on the day of the accident, soon after 12 o'clock noon, he borrowed a car from a fellow employee to go to lunch; that he then drove to a vacant lot on Walnut street between F. Strauss & Son's wholesale house and the Green Mill Cafe where he parked his car, entered the Cafe and had lunch. When he left the Cafe he went into the wholesale house to see what produce they had for sale. He denied that he bought anything or that he had any authority to purchase. After leaving the wholesale house, St. John reentered the car and drove it out into the street where the accident happened. It was his intention at that time to return to his place of work at Jitney Jungle No. 5.

Plaintiff testified that immediately after the accident he looked in St. John's car and saw a hamper of tomatoes and one of other vegetables. He is not corroborated by any other witness, although a number of people immediately congregated around the wrecked automobiles. He does not claim that the tomatoes had been thrown out of the hamper onto the floor, but one can only gather from his testimony on this point that the tomatoes were all in place. It would be most unusual if the tomatoes, if in the car, had not been scattered all over it after such a collision as this was; and it is likewise unusual, with as many people gathered around, that plaintiff could not have found someone to corroborate him on this point. If St. John purchased any produce, it is most certain he did not pay for it and this information could have been received from the seller.

A few days after the accident, St. John signed a statement at the request of an attorney representing one of the other defendants in which he said: "Last Tuesday, May 13th, about 1:15 o'clock P. M., I had been to F. Strauss & Son's to get some produce for Jitney Jungle No. 5 of which I am Manager."

We have no doubt the statement was voluntarily given, but we are likewise sure that it is at least partially incorrect, for it has been shown beyond doubt that he was not the manager. His written statement and his testimony conflict in only two respects and that is the above quotation. We know he was in error when he said he was manager, and we doubt seriously

the other part as to why he went to F. Strauss & Son. There is no denial that he left the store to go to lunch and he did go.

We have discussed this testimony for the reason that plaintiff relies chiefly upon the above quoted statement of St. John to make a recovery in this case. However, we are of the opinion that if St. John had done exactly what plaintiff claims, it can avail him nothing under the law for the reason that it has been shown clearly that he had no authority to purchase goods for the store; had never bought any before; that he was not using a car furnished him by the defendant, but was operating a borrowed one, without the consent or knowledge of any of defendant's officers and in violation of explicit instructions not to use even a personal car on any business for defendant. It has not been shown that his acts were necessary to further the business of defendant. It has not been shown that it was necessary for him to use a car in order to secure the produce; to the contrary, it is shown that when the purchasing agent bought anything from F. Strauss & Son and wanted immediate delivery, it was made at once in a light pickup truck. There is no testimony in the record to even indicate that there was any implied authority to perform the acts plaintiff contends St. John did. He clearly was not acting within the course and scope of his employment.

The case of Kennedy v. Union Charcoal & Chemical Company, 156 Tenn. 666, 4 S.W.2d 354, 57 A.L.R. 733, is so close to being on all-fours with the one at bar and so thoroughly reviews the jurisprudence of many jurisdictions, that we will quote rather freely from it:

"This suit was instituted by the plaintiff, E. J. Kennedy, against the defendant, Union Charcoal & Chemical Company, to recover damages for an injury resulting from a collision between a motorcycle, on which plaintiff was riding, and an automobile which Alt, an employee of defendant, was driving. * * *

"The defendant is a New York corporation operating a small branch plant near the city of Memphis. It is engaged in grinding, sacking and selling charcoal. ·

"Alt was in charge of the Memphis plant, the other force consisting of four negroes. Alt was more of a servant than an agent. His principal duty was to see that the four negroes were kept at work.

"Some officer of the company visited the Memphis plant every few weeks, made all of the purchases, sold the output of the plant, with the exception that if a customer came to the plant to purchase a sack of ground charcoal Alt was authorized to sell it to him for cash. * * *

"Most of the charcoal which defendant ground came from the plant of the Forest Products Chemical Company, located a quarter of a mile from the plant of the defendant. It required five minutes to walk and one minute to ride in an automobile from one plant to the other, and they had telephone connections. ·

"The facts which we wish to emphasize are that the defendant neither owned, used, nor had any need for an automobile in connection with its Memphis plant. It did not authorize Alt to use his individual car in connection with his duties at said plant, and had no actual knowledge that he was so using it. His duties, according to the president of the company, were confined to the plant. ·

"On the morning of the accident Alt drove in his car from the plant of defendant to that of the Forest Products Chemical Company for the purpose of requesting it not to send any more wet charcoal. It was on the return trip that he collided with the motorcycle of plaintiff.

"Assuming that Alt was at fault, the question is, was he such an employee as to enable the plaintiff to invoke the doctrine of respondeat superior?

"We will now state some of the principles of law governing cases of this character."

The court then quotes from 18 Ruling Case Law; Blashfield's Cyclopedia of Automobile Law, 1927, Vol. 2, § 9, page 1375; Labatt, Master & Servant, 2d Ed., Vol. 6, page 6888; and cases from many other jurisdictions, and concludes its opinion as follows:

"To hold the master liable in the circumstances of this case would be to extend the rule of respondeat superior further than any adjudication, to which our attention has been directed, has yet gone, as well as beyond the rule of reason. Such a holding would be most disastrous in its results, and, as said by Mr. Justice Park, if this were the rule 'every master might be ruined by acts done by his servants without his knowledge or authority.'

"For the reasons stated herein, the judgment of the Court of Appeals will be reversed, and that of the trial court affirmed."

Also see O'Loughlin v. Mackey, 182 App. Div. 637, 169 N.Y.S. 835; Cado v. Many, La.App., 180 So. 185; and Berry's Law of Automobiles, 7th Ed., Vol. 4, page 649.

We therefore conclude that there is no liability on the part of defendant for the negligent acts of St. John and the judgment of the lower court is affirmed, with costs.