LEROY J. BLACKMAN, PLAINTIFF-APPELLANT, v. ATLANTIC CITY AND SHORE RAILROAD COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.

Argued February 5, 1941—Decided May 1, 1941.

For the plaintiff-appellant, *William Elmer Brown, Jr.*

For the defendant-respondent, *George A. Bourgeois.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The question in this case is whether upon the facts exhibited responsibility attaches to the master for the employe's tort under the *respondeat superior* doctrine. The basis of the employer's liability in the case, if any, rests on agency. If the act of the employe which resulted in injury and damage to the plaintiff was the act of the employer, *i. e.*, one that was done for its benefit and within the scope of the employment, the employer must answer for the harm which the stranger suffers from it, and the test is whether there was from the employer an express or implied authority for doing that which was done out of which the harm came. That the master, so called, is answerable for the acts of his employe done within the scope of the employment is the settled law, but the difficulty arises from any attempt to define with precision the phrase "scope of employment."

In this case the trial court directed a verdict upon which judgment was entered in favor of the defendant, Atlantic City and Shore Railroad Company, which was the employer of the alleged tort feasor, Welsh. The appeal is from that judgment. The following are the facts as the appellant states them.

The plaintiff, Blackman, was struck and injured by an automobile owned by Welsh and driven by him at the time of the happening. Welsh was in the employ of the defendant as a bus operator, detailed to carry the traveling public between Ocean City and the Inlet at Atlantic City, New Jersey. Welsh reported each day at 1:25 P. M. at Ocean City and operated on regular schedule between that place and Atlantic City until 10:55 P. M. "He was required to return the bus to the parking lot in Ocean City and thereafter make return to the company of the fare collections of the day either at the dispatcher's office on the parking lot or to the cashier at the office of the company at the Inlet in Atlantic City. He was privileged to make his returns at either place; it was his duty to make the returns at the completion of his work before going home * * * On July 2d, at the time of the acci-

dent, Welsh was on his way from Ocean City to the Inlet at Atlantic City to make the return of his collections. * * * On the day in question Welsh used his own automobile going to work and for returning at the end of the day." It appears that Welsh had free transportation over the defendant's trolley system between Ocean City and Atlantic City. The appellant concedes that the question, under the facts of the case, is whether Welsh, because he was using his own automobile at the time of the accident, can be said to have been acting within the general scope of his employment. The argument for reversal rests in part on the proposition that the service done was for the benefit of the master, citing *Eldridge* v. *Calhoun*, 95 *N. J. L.* 168, 170. But this case is no authority for the proposition for which the appellant contends. All that was decided in that case was that the negligent act of a servant, which was in disobedience of the master's instruction and not concerned with the employer's business or for her benefit, created no liability on the part of the employer.

In this class of case the question usually is should the conduct of the servant in relation to the master be reserved for a jury to determine whether the negligent act is within the scope of the employment. The fact situation here, however, presents no perplexity. Welsh, called as a plaintiff's witness at the trial, in substance, testified that he was detailed to operate over this particular route on June 24th, 1938; that the accident happened on the night of July 2d; that he left his own car at a parking lot in Ocean City, which lot was rented by the defendant for parking its buses; that from the date he started on this run, a matter of eight days, he had used his own automobile twice or possibly three times to go to and from work; that on the other occasions he returned to Atlantic City, where he resided, by trolley.

There was no proof that the defendant or any of its agents knew that he used his own car to get to Ocean City or to return to Atlantic City or that he parked it on the company's leasehold. There was no proof that the defendant or any of its agents knew that Welsh operated or owned a private automobile; or that he told his principal and had received per-

mission to use his own automobile in delivering the moneys collected for fares to their Atlantic City office. It appears that he used his own car as a matter of personal convenience. The witness, Miller, supervisor of transportation for the defendant, testified that the bus driver, Welsh, was given a badge by him that entitled him to free transportation over the division of the Atlantic City and Shore Railroad Company, going to and from his work; that he did not know Welsh owned an automobile.

In the case of *Wilson* v. *Pennsylvania Railroad Co.,* 63 *N. J. L.* 385, it was held that the employer, defendant in that case, was not liable for personal injuries visited on the plaintiff when it appeared from the testimony that the servant was provided with one kind of vehicle to do his work and had, without authority, used a different kind of conveyance in its performance. That is not exactly this case, but it does lay down a principle that we consider sound. In the case of *Lambert* v. *M. Satsky Trucking Co.,* 118 *Id.* 485, 488, the rule is stated that where the servant, even in the execution of his general duty, uses an instrumentality not expressly or impliedly authorized by the master, and damage results, the master is not liable. This statement of the law we consider sound. See, also, *Glowacky* v. *Sheffield Farms Co.,* 4 *N. J. Mis. R.* 849; 134 *Atl. Rep.* 674; *affirmed,* 103 *N. J. L.* 697; 137 *Atl. Rep.* 916. See *Pyyny* v. *Loose-Wiles Biscuit Co.* (a Massachusetts case), 149 *N. E. Rep.* 541. Other authorities, cited by appellant, of which *Klitch* v. *Betts,* 89 *N. J. L.* 348, is typical, are not, in our judgment, pertinent to the fact situation here.

From the evidence in this case it is clear enough that the automobile trip made by Welsh from Ocean City to the Inlet in Atlantic City on the night of July 2d, 1938, was within the scope of his duties, *i. e.,* to turn in the moneys collected, at the office of the defendant, which he was privileged to do at either office of the company; but it is equally clear that the method employed to perform the duty was outside the scope of his employment, the means used being entirely for his own convenience unknown to and unauthorized by the defendant

and over which it had no control, actual or potential. See *Holdsworth* v. *Pennsylvania Power and Light Co.,* 10 *Atl. Rep.* (*2d*) 412; *Restatement—Agency,* § 239.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 16.

*For reversal*—None.