13 N.J. Super. 550 (1951)
81 A.2d 20
ANGELO NICOSIA AND FREDERICK SCHAEFER, PLAINTIFFS-APPELLANTS,
v.
RALPH MARANGI, DEFENDANT-RESPONDENT, AND JAMES E. ALSTON, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1951.
Decided May 22, 1951.
*551 Before Judges McGEEHAN, JAYNE, and WM. J. BRENNAN, JR.
Mr. Harry Chashin argued the cause for appellants (Messrs. Marcus & Levy, attorneys; Mr. Hyman W. Rosenthal, of counsel).
Mr. Donal C. Fox argued the cause for respondent (Messrs. Fox & Schackner, attorneys).
*552 The opinion of the court was delivered by JAYNE, J.A.D.
The present litigation arose out of the occurrence of a collision on the morning of September 10, 1949, at the intersection of Edison Street and Maplewood Avenue in the City of Clifton, between a passenger automobile owned and occupied by the plaintiff Angelo Nicosia and driven by the plaintiff Frederick Schaefer, and a motor truck owned by the defendant Ralph Marangi and operated by the defendant James E. Alston.
At the conclusion of the introduction of the evidence, the plaintiffs submitted to a voluntary dismissal of their cause of action against the defendant Alston, and on motion the court granted a judgment in favor of the defendant Marangi.
We do not concern ourselves with the proof of the circumstances amid which the collision itself occurred. The subject matter of the present appeal pertains solely to the existence of any evidence to establish in a prima facie degree either the express or implied authority of the defendant Alston to operate the truck on that occasion as the agent and servant of the defendant Marangi.
The evidence discloses that the defendant Marangi was engaged in the business of collecting and removing garbage and ashes deposited in front of the premises of the inhabitants of the City of Clifton. In the pursuit of that business he used several motor trucks, and for each truck he engaged a crew consisting of a licensed driver to operate the truck and among the others one or more "lifters" whose duty it was to lift the containers from the curb to the body of the truck. There is no doubt that Alston was employed as a "lifter." The general supervision of the operations was entrusted by Marangi to his foreman, Curley.
About one-half hour before the happening of the collision, Curley in the course of his customary tour of inspection arrived in the vicinity of the truck and discovered that one Schettino, who was the driver of the truck, had become ill and that he was unable to continue to operate the truck.
*553 Observing the situation Curley announced his intention to take Schettino home and admonished the others including Alston: "Stay right here and wait for me to come back." "You fellows stay right here until I come back." "I am going to take Mr. Schettino home, I intend to find someone else, if not I will come back and operate the truck myself. * * *"
Notwithstanding such express instructions, and moreover without any official license to drive a motor vehicle, Alston nevertheless resolved to operate the truck during the temporary absence of his foreman and in so doing engaged in the occurrence of the mishap.
Although Alston had pursued his employment from January 6, 1948, it is not evident that the defendant Marangi or his foreman, Curley, had any knowledge that Alston had ever driven any of the trucks on a public street. Marangi had expressly forbidden him to drive them.
His employer, Marangi, described the nature of the duties of Alston's employment:
"He picks cans off the curb and throws them up on the truck to a man waiting up there, and the man on the truck empties the can and throws it back to him and he places the can back on the curb."
Alston's acknowledgment of his conduct is exposed by the following excerpt from his testimony:
"Q. And he (Curley) told you that he was going out to see or off to see if he could get another driver, didn't he? A. Yes.
Q. And he also told you that if he could not get another driver he would come back himself and drive the truck, did he not? A. Yes.
Q. And on the morning of September 10, you had not seen Mr. Morangi that morning, had you? A. No.
Q. You had not talked to him the night before, had you? A. No.
Q. As a matter of fact, Mr. Morangi never at any time gave you permission or authority as a helper to drive that truck on the day of September 10, 1949, did he? A. No.
Q. And Mr. Curley, as your immediate superior and supervisor, never gave you any permission or authority to drive that truck, did he? A. No.
Q. And Mr. Schettino, who was the driver of the truck, never gave you any permission to drive or to operate that truck, did he, on September 10, 1949? A. No.
*554 Q. So that as a matter of fact, when you got into that truck and started to drive that truck, you were driving the truck in violation of or against the instructions of your employers that you were not to operate the truck, is that so? A. That is right."
True, there is some testimony disclosing that on one occasion Marangi discovered Alston operating a truck on Marangi's private garage property and expressed in the language of Marangi, "I gave him Hell for doing it." The foreman, Curley, once saw Alston driving a truck on the garage property up to a gas pump. "A. I saw him one time. The next time I catch him he is fired, and he knows that."
From other testimony it may be justifiably inferred that Schettino, the licensed driver, had on some occasions permitted Alston to drive the truck without the knowledge of his employer or his foreman. Schettino frankly acknowledged that he did not have "any authority whatsoever" to permit any of "his helpers or loaders to operate the truck."
Counsel for the appellant endeavor to magnify unduly the evidential weight and legal significance of two of the acknowledged facts: the one, that the defendant Marangi was the owner of the truck; the other, that it was being operated in furtherance of that defendant's business.
The rule is familiar that proof of the defendant's ownership of an automobile driven on a public highway raises a presumption of fact that such automobile was in the possession of the defendant, if not personally, then through his servant, the driver, and that such driver was acting within the scope of his employment. Both or either of those presumptions may, however, be overcome by uncontradicted proof to the contrary, and if so overcome by uncontroverted proof that the automobile was not being used by the servant within the scope of his employment, then a motion for judgment for the defendant owner will be granted. It is only where the evidence in such particulars is contradictory or reasonably subject to contradictory interpretations that the question becomes one for the determination of the jury. Tischler v. Steinholtz, 99 N.J.L. 149 (E. & A. 1923); Onufer v. Strout, 116 N.J. *555 L. 274 (E. & A. 1936); Coopersmith v. Kalt, 119 N.J.L. 474 (E. & A. 1938).
In the present case we are of the opinion that the proofs adduced contained no contradictions nor were they subject to contradictory interpretations concerning the scope of the servant Alston's employment.
It is an erroneous notion to suppose that a master's liability may be established merely by proving that the act of the servant, although unauthorized, unprivileged, and capricious, nevertheless chanced coincidentally to be "in furtherance of the master's business."
Of the reported cases on the point we conceive the following excerpt extracted from the decision in Haining v. Turner Centre System, 50 R.I. 481, 149 A. 376 (Sup. Ct. 1930), to be particularly apposite: "Both cases assert that the employee was acting in furtherance of the master's business. This alone is not enough. It also must appear that the means of furtherance have been expressly or impliedly entrusted to the employee. If a servant is employed only as a helper on a truck, implied authority to drive the truck on the public highways is not a warrantable inference from such hiring. To find that operation of the truck is within the scope of such servant's employment, it must be shown to be included in the general type of service in which the servant is engaged. Stone v. Com. Coal Co., 259 Mass. 360, 156 N.E. 737. Operating a motor vehicle is not a task to be intrusted to every employee. It requires special skill. One may not operate alone without permission from the state until after he has passed an examination to establish his qualifications as a driver. Operation on public highways without a license is contrary to law, and the jury may not be permitted to infer from the mere presence of the helper on the truck that the employer impliedly authorized him to do an act in violation of law, nor can the mere fact that injury is done by a servant while using the master's property in what he honestly believes to be the latter's service warrant an inference of authority in the face of evidence that the servant is acting outside the *556 scope of his employment. Boettcher v. Best & Co., 203 App. Div. 574, 197 N.Y.S. 1. The intention of the servant to further the master's business, however laudable, may not make the master responsible for the servant's torts unless committed while acting within the bounds of duties expressly or impliedly entrusted to him. O'Loughlin v. Mackey, 182 App. Div. 637, 169 N.Y.S. 835."
Moreover we recognize the well established principle that where a servant, even in the execution of his general duty, uses an instrumentality not expressly or impliedly authorized by his master, and damage results, the master is not liable under the doctrine of respondeat superior. Blackman v. Atlantic City, &c., R.R. Co., 126 N.J.L. 458 (E. & A. 1941).
We conclude that the action of the trial judge in the existing state of the evidence was not erroneous, and the judgment is therefore affirmed.