CULPEPPER, Judge.
This is a suit by National Fire Insurance Company of Hartford to recover from E. M. Rowe, d/b/a Laurel Hill Lumber Company for workmen’s compensation benefits paid by the plaintiff insurance company to and for the benefit of Burks Jones, Jr. because of accidental injuries sustained by Jones on or about September 9, 1955 while he was in the course and scope of his em *105 ployment for the plaintiff’s insured, Afton Villa Farms. It is stipulated that the plaintiff did pay to or for the account of Burks Jones, Jr. the sum of $2,662.67 because of the injury sustained by this employee and now the plaintiff seeks to recover this amount from the defendant as employer of the alleged tort-feasor.
After a trial on the merits, the lower court denied recovery to the plaintiff on the ground that the tort-feasor, one Frank Davis, an employee of the defendant, was not acting in the course and scope of his employment at the time of the accident. From this decision plaintiff has appealed.
The facts are that on September 9, 1955, Mr. Wallace Percy of Afton Villa Farms sent his brother-in-law, Frank Lathrop, to the defendant’s mill with a load of lumber which was to be dressed there. Afton Villa Farms furnished two of their colored laborers, Burks Jones, Jr., the injured employee, and Frank Prowder, to load the truck and to go with Mr. Lathrop to the mill where they were to unload the lumber. Mr. Lathrop arrived at the mill, parked his truck near the office, went in to find out where the lumber should be unloaded and after securing this information from the defendant’s office personnel, went back to his truck. Lathrop then attempted to start his truck but the starter would not operate and so he went back into the office to ask for help in getting his truck started. The office personnel referred Lathrop to the mill foreman, Mr. Virgil Davis, whom Lathrop located at the planing mill. Lathrop asked Davis for a tractor to pull off the truck. Mr. Davis testified that in response to this request by Lathrop, he answered that he had a tractor but he did not have a driver and that what he meant was that Lathrop could use the tractor, but he would have to drive it himself. Mr. Lathrop, on the other hand, testified that his understanding of this conversation was that Mr. Davis would send someone to drive the tractor for the purpose of starting the truck.
After this conversation, Mr. Lathrop returned to his truck and he and his two colored employees opened the hood and were standing next to the front bumper ex-aming the motor when, suddenly, out of the corner of his eye, Lathrop saw a tractor bearing down on them about four feet from the front of the truck. Lathrop yelled and he and Frank Prowder were successful in jumping out of the way, but Burks Jones, Jr., who was in the middle, was trapped and the tractor pinned Jones’ leg against the front bumper of the truck, causing a fracture to the leg.
The tractor, at the time of the accident, was being operated by Frank Davis, a 35 year old colored employee of the defendant. Frank Davis was employed by the defendant as a resaw-trimmer ^md he testified that he had left his working place for a minute to go get a drink of water from a barrel near the office and while he was there, some colored man, not one of his fellow employees, asked him to help start a stalled truck. Frank Davis testified that he then got on the tractor and started backing it up for the purpose of hitching a chain to the truck to pull it off and he could not handle the tractor very well, so he simply backed on into the front bumper of the truck and injured Burks Jones. The negligence of Frank Davis was, of course, the proximate cause of the accident.
Frank Davis testified positively that he was not instructed by Mr. Virgil Davis, the mill foreman, or any other employee of the defendant to mount this tractor or to try to assist in starting the truck. The evidence shows without question that the defendant, Mr. Rowe, was not present at the mill at the time of this incident, he having left his foreman, Mr. Virgil Davis, in charge. Mr. Virgil Davis testified positively that he did not authorize or instruct Frank Davis, or any other employee of defendant, to drive the tractor or to assist in starting the truck, he having assumed that Mr. Lathrop would drive the tractor himself.
*106 The lower court found from the evidence that neither Mr. Virgil Davis nor any other employee of the defendant authorized or instructed Frank Davis to drive the tractor and help pull the truck off. We certainly can find no manifest error in this finding of fact by the lower court. We agree with our brother below that the evidence in this regard certainly preponderates in favor of the defendant.
However, the plaintiff contends that even if we accept as true the testimony of Frank Davis that it was some colored man, other than an employee of the defendant, who requested that he help start the truck, the ■defendant is still liable because Frank Davis was at the time an employee of the defendant and he was acting for the benefit and in furtherance of his employer’s business in operating the tractor. It is true that Frank Davis was at the time of the accident acting for the benefit of his employer. Mr. Lathrop had hauled this load of lumber to defendant’s mill to be dressed and although the evidence shows that defendant was going to dress the lumber without charge and as an accommodation to Mr. Percy, Mr. Lathrop was nonetheless a business invitee on the premises of the defendant and the actions of Frank Davis in assisting Mr. Lathrop were in furtherance of defendant’s business of operating this lumber mill.
In support of his contention, counsel for the plaintiff cites the case of Traveler’s Fire Insurance Co. v. Savoy, 82 So.2d 68, decided by this Court in 1955. In the cited case, a tractor owned by petitioner’s assured was damaged while crossing a bridge on the farm operated by defendant. The tractor was at the time being driven by an employee of the defendant who was assisting in the harvesting of defendant’s cane crop. The evidence showed that this employee of defendant had been instructed by one of the owners of the tractor, without any knowledge on the part of the defendant employer, to operate the tractor. Furthermore, the evidence showed that the employee had been driving the tractor for some time prior to the accident without any objection being made by defendant’s son-in-law who was in charge of the harvesting and who knew that this employee was driving the tractor. The Court therefore held that the employee had at least the implied permission of the defendant or his agent in charge to drive the tractor and that therefore the employee was acting within the course and scope of his employment.
The cited case is readily distinguishable from the case at bar because here there is no evidence that Frank Davis had been working as a tractor driver with the knowledge or consent of the defendant or any of his agents..
The defendant, Mr. Rowe, did testify that previous to the accident he had on more than one occasion seen Frank Davis sitting in the seat of the tractor and he thought that he had seen him move it and shift the .gears and that it was his impression that Frank Davis was just “messing around” with the tractor. Mr. Rowe testified positively however, that Frank Davis was a resaw man and not a tractor driver and that he would not have instructed Frank Davis to drive the tractor because he did •not know that he could operate it safely. The defendant had a qualified and experienced tractor driver for this purpose.
The defendant has cited the case of Romero v. Hoque, 77 So.2d 74, decided by this Court in 1954 in which it was held that where the employee was supervising for his employer the repair of a mud pump in another municipality, and used his own automobile to drive to and from work, and was not subject to the employer’s control while so traveling nor reimbursed for travel expenses, the employee was not within the course and scope of his employment while so traveling as to render the employer liable under the doctrine of respondeat superior. The opinion in the cited case discusses at length the jurisprudence in situations where an accident occurs while the employee is going to or from work, but this is not the precise question which must be decided in the case at bar.
*107 The issue here is whether Frank Davis, who was employed by the defendant as a resaw man, was, under the doctrine of respondeat superior, acting within the scope of his employment when he without any authorization from his employer or knowledge of his employer took it on himself to try to drive a tractor, which, of course, requires special skill to operate, in an attempt to assist a business invitee to the premises of the employer. Some of the factors involved in these questions of “scope of employment” are set forth in 57 C.J.S. Master and Servant § 570, pp. 303-306, as follows:
“The determination of what conduct of a servant is within the scope of his employment or authority is necessarily largely dependent on the facts and circumstances involved in the particular case in which the question arises, and no general rule can be formulated which will determine in each case whether the servant was acting within the scope of his employment. Nevertheless, it may be laid down as a general rule that whatever is done by the employee in virtue of his employment and in furtherance of its ends is deemed by the law to be an act done within the scope of his employment, and that, in determining whether the servant’s conduct was within the scope of his employment, it is proper to inquire whether he was at the time engaged in serving his master. * * *
“A servant has implied authority to do what is usual, customary, and necessary to fulfill the duty intrusted to him by the master, and accordingly an act is within the scope of a servant’s employment where it is reasonably necessary or appropriate to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. * * *
“On the other hand, the fact that the act in question was advantageous to, or convenient for, the master, or even effectual in transacting the business in which the master was engaged, is not in itself sufficient to bring the act within the servant’s scope of employment-A fortiori, an act will not necessarily be considered as within the scope of the servant’s employment merely because the injuries complained of would not have been committed without the facilities afforded by the servant’s relations to his master, or merely because the act was committed during the period covered by the servant’s employment, or merely because the servant supposed that he possessed authority to do the act in question or conceived his conduct to be in the interest of the master.”
Regarding the employee’s authorization to use the specific instrumentality which caused the injury, we find a general statement of the law in 57 C.J.S. Master and Servant § 570, p. 307, as follows:
“The servant may act within the scope of his employment in using an instrumentality not expressly authorized to effect a result which he has been ordered by the master to accomplish where the means to be used are not specified and no other means of obeying the order are available. The master is not liable, however, where the servant, even in the execution of his general duty, uses an instrumentality not expressly or impliedly authorized by the master, or which is of a kind substantially different from that authorized, or over the use of which it is understood the master is to have no right of control. * * *
“In determining whether or not the use of an unauthorized instrumentality is within the scope of the employment, the additional risk from the use is an important fact to be considered.”
In the case of Dunn v. Campo, 179 So. 102, 105, decided by the Orleans Court of Appeals in 1938, a retail grocer’s delivery boy, who ordinarily made deliveries on *108 foot or by wheelbarrow borrowed a car from a salesman and used it to make a delivery. Judge Westerfield, as the organ of the Court, held as follows:
“There is no evidence in the record which would justify the conclusion that Campo knew or tacitly approved of the previous use by John Achary of the Grabenheimer automobile as contended for by plaintiff’s counsel. In our opinion, Achary merely sought an easy way of discharging the errand of his employer, and even though it be conceded that he had done so on previous occasions, we are convinced that it was without the knowledge or consent of his employer. To hold that a small retail grocer, such as Campo appears to be, would be liable for the unauthorized use of such a potentially dangerous instrumentality as an automobile would be to extend the responsibility of the master unreasonably.”
In the case of Nicosia v. Marangi, 13 N.J.Super. 550, 81 A.2d 20, 22, the Court held as follows:
“It is an erroneous notion to suppose that a master’s liability may be established merely by proving that the act of the servant, although unauthorized, unprivileged, and capricious, nevertheless chanced co-incidentally to be ‘in furtherance of the master’s business’.”
Under the authorities cited above and the facts of the present case, we are of the opinion that although the actions of the employee, Frank Davis, were in furtherance of his master’s business, he was not either expressly or impliedly entrusted with the operation of this tractor. Operating a tractor is not a task which is entrusted to every employee because it requires special skill. The operation of this tractor was, of course, in no way connected with Frank Davis’ employment as a resaw man. He simply took it on himself to climb upon this vehicle, which he could not operate, and was not employed, instructed or authorized to operate and without the knowledge on the part of his employer, proceeded to do something which he thought was in furtherance of his master’s business, but which was outside the scope of his employment.
In view of our holding as set forth above that Frank Davis was not acting within the scope of his employment at the time of the accident, it is unnecessary for us to consider the alternative plea of contributory negligence on the part of Frank Davis which is urged by the defendant.
For the reasons hereinabove set forth, the judgment appealed is affirmed.