Joanne COONER, by her Guardian ad Litem, Harold E. Cooner, Sr.; James Cooner, by his Guardian ad Litem, Harold E. Cooner, Sr.; and Harold E. Cooner, Jr., by his Guardian ad Litem, Harold E. Cooner, Sr., and Harold E. Cooner, Sr., individually, and as Administrator of Estate of Vera Smoak Cooner, deceased, Appellants,

v.

UNITED STATES of America, Appellee.

No. 7887.

United States Court of Appeals Fourth Circuit.

Argued Oct. 14, 1959.

Decided March 1, 1960.

Henry Hammer, Columbia, S. C. (Henry H. Edens, Columbia, S. C., and Kearse & Ness, Bamberg, S. C., on brief), for appellants.

Mark R. Joelson, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C.,

and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

This is another in a long line of troublesome cases involving the problem whether service personnel whose negligent driving has injured others were acting within the scope of their employment.

The present action, under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 and 2674,[1] arises from an automobile accident which occurred in New York, when Major Ralph H. Miller, an Army officer, driving his own automobile, collided with an automobile driven by Mrs. Vera Smoak Cooner. Both Major Miller and Mrs. Cooner were killed, and three children of Mrs. Cooner, passengers in the automobile driven by her, were seriously injured, one of them sustaining permanent brain damage. The children, by their guardian, Harold E. Cooner, Sr., and Harold E. Cooner, Sr., for himself and as administrator of Mrs. Cooner's estate, brought this suit against the United States, alleging that Major Miller was acting negligently and within the scope of his employment, and that, therefore, his employer, the United States, was liable under the doctrine of *respondeat superior*.

The District Court for the Eastern District of South Carolina, where the suit was filed, granted a motion of the United States for summary judgment on the ground that Major Miller was not acting within the scope of his employment at the time of the accident and thus the United States was not liable under the Tort Claims Act. The facts being undisputed, the only legal issue is whether the Major was acting in the scope of his employment. The Government admits that if he is held to have been so acting, "as the investigation of the case now stands," it would be liable.

Major Miller was stationed at Ft. Leavenworth, Kansas, when, on March 15, 1957, he received travel orders issued by the Department of the Army directing

---

1. 28 U.S.C.A. § 1346(b):

"Subject to the provisions of Chapter 171 of this title, the district courts, together with the District Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C.A. § 2671:

"As used in this chapter and sections 1346(b) and 2401(b) of this title, the term—

" 'Federal agency' includes the executive departments and independent establishment of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include any contractor with the United States.

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

" 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

28 U.S.C.A. § 2674:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages * *."

It has been held that the phrase "line of duty," as applied to military personnel is the equivalent of "scope of employment," and is no broader. United States v. Campbell, 5 Cir., 1949, 172 F.2d 500; King v. United States, 5 Cir., 1949, 178 F.2d 320.

him, upon completion of his course of instruction at Ft. Leavenworth, to proceed to Washington, D. C., for three days temporary duty, not later than July 10, 1957. He was given six days leave *prior* to reporting to Washington, and was instructed to proceed, after expiration of the three days temporary duty in Washington, to his new permanent duty station at Ottawa, Canada, where he was to report not later than July 15, 1957. On April 2, 1957, his orders were amended to provide for sixteen days leave *prior* to reporting in Washington for temporary duty, and to permit him to take his wife and children with him to his new duty post at Government expense. After using his sixteen days leave, Major Miller reported to his temporary duty station in Washington, where he spent three days as required. He then proceeded toward Ottawa, driving his privately owned automobile, and using a direct route. While passing through New York, en route to his new permanent duty station, the accident occurred.

In Major Miller's orders, and in the Army regulations therein referred to, it was provided that: (1) his travel was deemed necessary for his military service; (2) he was permitted to use whatever suitable mode of transportation he desired, including his own automobile; (3) he was to be reimbursed at the rate of six cents per mile if he used his automobile. It is also provided in the Uniform Code of Military Justice, 10 U.S.C.A. § 911, formerly 50 U.S.C.A. § 705, that a serviceman who operates a vehicle in a reckless or wanton manner is subject to disciplinary action.[2]

The appellants and the Government agree that, as the accident happened in New York, the law of that state controls in determining whether Miller was acting within the scope of his employment, and they are in further agreement that there is no decided New York case ex-

actly in point. However, both vigorously maintain that the principles announced in the New York decisions involving the doctrine of *respondeat superior* support their respective positions, and both rely on cases decided by federal courts throughout the country, presenting fact situations more or less similar to the present case. The Government asserts that the Army did not direct Miller to use any particular mode of transportation and was indifferent as to the means he chose; the Army did not control him in his use of his own automobile; and his normal duties as an Army officer did not involve driving vehicles. The appellants, on the other hand, rely on such factors as that Major Miller was making the trip solely because his employer directed him to do so; he had no personal interest in travelling from Washington to Ottawa; he was authorized to use his automobile; he was driving on a direct route with no business or frolic of his own involved; and he was reimbursed for his travelling expenses.

Before examining the New York cases, none of which is precisely the same factually, we think it will be useful to review some of the federal decisions in this area of the law. It must be acknowledged that the pattern they reveal is somewhat confused. Although Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, requires the federal courts, in suits under the Federal Tort Claims Act, to apply the law of agency of the place of the accident to determine whether a Government employee is acting in the scope of his employment, the Act itself requires all such suits to be filed in a federal court.[3] The result is that, while state law is to be applied, there can never be state cases exactly in point as to the factual situations involved. Thus, while in cases arising since Williams the courts have attempted to find light in decisions of the state courts where the accidents hap-

2. 10 U.S.C.A. § 911:
   "Any person subject to this chapter who operates any vehicle while drunk, or in a reckless or wanton manner, shall

   be punished as a court-martial may direct."

3. 28 U.S.C.A. § 1346(b).

pened, they have also felt it necessary to look to general agency principles.

Before Williams v. United States, supra, there was some doubt concerning the law to be applied in determining whether a federal employee was acting in the scope of his employment, with some cases, including those in this circuit,[4] holding that such a determination was to be made according to federal law, and the courts were not bound by decisions of the state where the accident happened. However, as previously pointed out, the Williams case made it clear that the question whether an employee was acting in the scope of his employment was to be resolved with reference to the agency law of the place of the accident. The four cases involving military personnel driving their own automobiles which have arisen in this circuit, three of which the Government here relies upon, were all decided before Williams.

■ The first, United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914, involved a Marine lieutenant who was ordered to report to a new duty station, but was given about two weeks leave before being required to report. While on leave, driving his own automobile towards his home in Atlanta, Georgia, he crashed into another car in North Carolina. This court refused to hold the Government liable under the Federal Tort Claims Act. Although the decision there was clearly correct under the circumstances, as the lieutenant was on leave and travelling to his home for his own purposes, it is true that there is language in the opinion emphasizing the fact that he was driving his own vehicle and that the Government had no control over the manner in which he was driving.[5] Such language, however, must be considered in its factual context. The present case does not involve a soldier on leave but, rather, one travelling directly from one duty station to another, under specific directions to do so, and using an authorized mode of transportation. He had no personal motive in driving to Canada but was *ordered* to make the trip, and was allowed only sufficient time to drive to Ottawa and no free time for any side trips.

■ United States v. Sharpe, 4 Cir., 1951, 189 F.2d 239, presented a similar situation. A soldier who had been ordered to move from one Army camp to another obtained permission to drive his own automobile rather than travel by a truck convoy which was transporting other soldiers who had likewise been ordered to make the trip. He was given a pass, was not required to report for duty at the new camp until the expiration of the pass, and his time was his own. He received no allowances for travelling expenses. The soldier was operating his car under these circumstances when a collision occurred in South Carolina, and

4. See e. g., United States v. Sharpe, 4 Cir., 1951, 189 F.2d 239.

5. United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914, 916:

"* * * It seems perfectly clear that, in driving his own automobile on this trip home on deferred leave, Lieutenant Talley was acting, not within the scope of his office or employment as a lieutenant in the Marine Corps, but for his own use and benefit and subject to the control of no one but himself. * * * When he chose to drive his own car, instead of availing himself of commercial transportation, he was acting in furtherance of his own purposes, not those of the government; and his action in driving the car cannot reasonably be said to have been action taken within the scope of his employment or office."

Turning to the present case, the statement cannot be supported that cases involving military personnel using their own automobiles in travelling from one duty station to another do not involve the "dual purpose rule" but rather the question whether the use of the automobile was in the scope of employment. The cases do not sustain this dichotomy, with different rules applicable to "dual purpose" situations in a proposed distinction from cases like the present. It is clear from the above quotation that the court in Eleazer considered the lieutenant's use of his personal car, in that situation, as "acting in furtherance of his own purposes, not those of the government." That case, like most others concerned with this problem, treated the question as involving "dual purpose" activity.

the court held the Government not liable, observing that the case was indistinguishable from Eleazer. Both Sharpe and Eleazer are heavily relied upon by the Government, but neither, on its facts, requires us to hold in this case that Major Miller was not acting in the scope of his employment. A serviceman on leave or on pass cannot, normally, be said to be acting within the scope of his employment. He is in a similar position to a private employee during the latter's non-work hours or vacation. His activities at such times consist of his personal affairs, not usually connected with the business of the employer. Moreover, the Eleazer and Sharpe cases, (like the other two cases involving this problem decided by district courts in this circuit), were decided before the Williams case. In addition, the accidents occurred in North Carolina and South Carolina, and even if it could be said that those early cases took into account the law of the place of the accident, at the same time basing the decisions on general federal law, we are here concerned with an accident in another state, New York.

The two other cases decided in this circuit, Paly v. United States, D.C.D.Md. 1954, 125 F.Supp. 798, affirmed per curiam 4 Cir., 1955, 221 F.2d 958 and Satterwhite v. Bocelato, D.C.E.D.N.C. 1955, 130 F.Supp. 825, deserve mention. In Paly, a sailor was ordered to act as a military escort for the dead body of another enlisted man. The naval base at which the sailor was stationed was in Southern Maryland, whereas the body was to be transported to Baltimore for the funeral. In such cases, it was the normal practice for the escort to accompany the body in the hearse, but instead, this escort drove his own automobile, and while so engaged became involved in an accident. The court found that using his own car, where the normal practice in such situations was other-wise, was unauthorized, and refused to hold the Government liable.[6] In Satterwhite, on the other hand, an Army captain, stationed at Fort Belvoir, Virginia, was ordered to proceed to Camp Butner, Georgia, to inspect a tract of land. He was authorized to use his own automobile and received compensation for its use, although he was not required to use his own car, and could have availed himself of commercial transportation. In this respect, the facts in the Satterwhite case are closer to this case than the other three cases mentioned above. While travelling in his own car, the captain in Satterwhite had a collision in North Carolina, and the court held the Government liable for his negligence, distinguishing Eleazer and Sharpe on the ground that in those cases, the military men involved were on leave or pass status and received no reimbursement for travel expenses.

Four additional federal cases with facts bearing similarity to the present case merit some discussion. Two are in the Ninth Circuit. United States v. Kennedy, 9 Cir., 1956, 230 F.2d 674, discloses a situation similar to Eleazer. There, a soldier was granted ten days leave, and then an additional four days to travel, presumably from a place in the State of Washington, to a new duty station in California. Five days before he was to report to California, while still on leave, he was driving his own vehicle towards his new duty station when he negligently injured the plaintiff in Washington. The court, applying the Washington rule that where a servant is combining his own business with that of his employer, the employer is liable, held the United States responsible for his negligence. On the other hand, in Chapin v. United States, 9 Cir., 1958, 258 F.2d 465, a soldier, travelling directly from one base in California to another in Texas, under orders transferring him to a new

---

6. However, in Paly, there was some reason for the sailor's using his own automobile, as he was given orders to act as an escort at too late a time to ride in the hearse. Under such circumstances, a court might find implied authority to use his privately owned vehicle, but the court did not accept this view of the facts.

station in Texas, became involved in an accident in California, and the court refused to hold the Government liable, applying California law.[7]

In Hinson v. United States, 5 Cir., 1958, 257 F.2d 178, 181, an Army officer had an accident in Georgia while driving his own car, and proceeding under orders, from his home in Virginia to a new permanent duty station in Texas. The Government there made the same contentions it makes in this case concerning its indifference to and lack of control over the mode of transportation used. The Court of Appeals for the Fifth Circuit, in holding the Government liable under the Tort Claims Act, observed:

> "Control or the right to control the manner or means of performing the task hardly seem decisive. If the relationship of master and servant exists and if what the employee is doing is in the furtherance of the master's business, i. e., in the scope of his employment, the law gives the master the right of direction and control. And even that is not dispositive for if an employee subject to such direction and control violates those orders given pursuant to the right, the master is yet liable. Evans v. Caldwell, 52 Ga.App. 475, 184 S.E. 440.

> "If control of the servant is thought to be the touchstone of vicarious liability, it is as adequately supplied here as is ever possible

when driving servants are involved. For the Uniform Code of Military Justice made Capt. Westcott accountable to the Army for all of his actions, including the driving of automobiles, from the date of his entrance upon active duty. This was in no way altered by the indifference of the Army to the route or mode of travel selected. * * *

> "Hinson makes the unassailable point that under Georgia law ownership of the automobile is immaterial when it is operated by an employee in the scope of his employment, * * * with the express or implied consent of the employer * * *."

Just as the Georgia cases have not required the employer to own the automobile used on his business, as observed by the Fifth Circuit, the New York cases, likewise, have held the employer liable although the servant was driving his personal car. Burdo v. Metropolitan Life Insurance Co., 1938, 279 N.Y. 648, 18 N.E.2d 42; Kanigher v. Schwerin Air Conditioning Corporation, 1939, 280 N.Y. 751, 21 N.E.2d 520; Cooke v. Drigant, 1942, 289 N.Y. 313, 45 N.E.2d 815. In reply to the Government's argument that as the employee chose his own car for reasons of personal convenience, whereas the Government was indifferent as to the means of transportation, the officer was acting in the furtherance of his own interests rather than the Army's, the court in Hinson pointed to the Georgia

7. The Kennedy and Chapin cases can, perhaps, be reconciled, although they do seem to suggest different attitudes toward the same problem. In Kennedy, the Government apparently conceded that the only test, in determining whether the soldier was acting in the scope of his employment, was whether he was primarily furthering his own or his master's business. By this concession, the Government evidently abandoned its argument that, in addition to furthering his employer's business rather than his own, a servant must also be subject to detailed control when driving his own vehicle and his normal duties must consist of frequent travel. One can be further-

ing his master's business while driving his personal automobile, but still he may have a large degree of choice as to the details of the travel, and his normal duties may not consist of driving.

In Chapin, on the other hand, as the accident happened in California, the court relied upon a California case, McVicar v. Union Oil Co., 1956, 138 Cal.App.2d 370, 292 P.2d 48, which had refused to hold an employer liable when his employee was travelling from one work place to another, driving his own car, but without reimbursement. In Chapin, the court pointed out that the McVicar case had cited with approval United States v. Sharpe, supra.

rule that the sole purpose of the trip need not be the furtherance of the Master's business, but the travel may be in part to accommodate the servant. Again, this is also the rule recognized in New York. Riley v. Standard Oil Co., 1921, 231 N.Y. 301, 132 N.E. 97, 22 A.L.R. 1382; Clawson v. Pierce-Arrow Motor Car Co., 1921, 231 N.Y. 273, 131 N.E. 914; Marks' Dependents v. Gray, 1929, 251 N.Y. 90, 167 N.E. 181.

The Court of Appeals for the Fifth Circuit then clearly demonstrated that in driving to a new duty station under specific directions, the officer was engaged in the Government's business, not his own:

"Thus it is controlling that at the time of this collision, Capt. Westcott was performing a specific duty which had been assigned him—to *travel* to Fort Sam Houston. In executing this order to *proceed,* he made use of his private automobile with the express authority of the Army. For this the Army bore the expenses which were 'necessary in the military service.' In so doing he was not going *to* work, he was then engaged in the performance of one of the very duties specifically assigned to him, receiving Army pay, subject to military discipline and not on leave. His only choice was the immaterial one of route and means of travel." Hinson v. United States, supra, 257 F.2d at page 182.

The present case is a stronger one for the plaintiffs than was Hinson, as here Major Miller was travelling directly from one duty station to another, whereas there the Army officer was proceeding from his home to a new duty station.

In the Hinson case, the court takes the position that the test of the employer's control over the instrumentality used by the employee is normally applied to determine whether an employee is a servant or independent contractor; but once it is resolved that he is a servant, the issue then is whether he is furthering his master's business in an authorized manner, or is engaged in his own. However, the court goes on to show that, even if the control test is applicable to this situation to determine whether the Army officer is acting in the scope of his employment, that control is present because of his accountability for the manner in which he drove.

■ It may be pointed out that the cases are not completely in accord as to the role played by the element of control. It is agreed by all that the degree of control exercised over an agent is an important factor in determining whether he is a servant or an independent contractor. However, once it has been settled in a particular case that he is a servant, the authorities are apparently in conflict concerning whether, in addition to the servant being engaged in the furtherance of his master's business in an authorized manner, the master must also control or have the right to control in detail the instrumentalities by which the business is being carried on at all times. Some courts, as the Court of Appeals for the Fifth Circuit in Hinson, are of the view that, the master-servant relationship being established, it is not necessary to show that the master had control or the right to control the details by which the directions were being carried out. The reason for this may be, as the above court pointed out, that if an agent is a servant, and is engaged in the furtherance of his master's business at the time of the wrong, the necessary control is given the master by law. Other courts, dealing with cases involving servants driving vehicles, however, seem to require a showing that at the time of the accident, the Master had the right to control the details and manner of the servant's driving. See: Henkelmann v. Metropolitan Life Ins. Co., 1942, 180 Md. 591, 26 A.2d 418, 423; United States v. Eleazer, supra; 5 Blashfield, Cyclopedia of Automobile Law and Practice (Permanent Ed., 1954) Sections 3078 and 3079; Am.Jur., Automobiles and Highway Traffic, Section 653; Restatement, Agency, 2d § 239.

■ As will presently appear, however, the New York cases do not require a showing that the details of driving are subject to the master's control if the servant is operating the vehicle with his master's consent and in furtherance of the latter's business. Moreover, as the court demonstrated in Hinson, there is, in cases like this, some actual control exercised by the Army in that members of the service are by specific statute made responsible for the manner in which they drive *any* vehicle. Also, it cannot be doubted that the Army has the right to control the details of the driving, the route to be followed, etc., if it so desires, and the fact that the Army does not exercise its right, does not diminish its power over its own personnel in this respect.

A situation virtually identical to that now under consideration, is found in United States v. Mraz, 10 Cir., 1958, 255 F.2d 115, 116. There, an Air Force lieutenant, stationed in California, received orders to proceed to a new permanent duty station in New Mexico. His orders, like those in the present case, authorized either transportation by privately owned conveyance or commercial facilities, specified the particular date on which he was due in New Mexico, and allowed him mileage reimbursement if he chose to drive his own automobile. He was driving his own car on the most direct route to the designated destination when there was an accident in New Mexico. Holding the Government liable for his negligence, on the ground that he was acting in the scope of his employment, the Court of Appeals for the Tenth Circuit pointed out that:

" * * * courts have generally held a master liable for the wrongful acts of his servant committed while driving his own automobile, when such acts were done or committed in furtherance of the master's business, and while such self-owned automobile was being driven with the express or implied consent of the master * * *."

The court then reviewed several of the federal cases and observed that, although they could perhaps be reconciled because of the different circumstances involved and the different controlling state authority, there was still a divergence in the attitudes exhibited by the courts. Some, it was said, seemingly require the particular activity at the very time of the accident to be the business of the master in order for him to be liable (e. g., if the servant is driving a vehicle and causes an accident, the driving itself must be part of the servant's regular duties), while others merely require that the servant be engaged in the furtherance of the master's business rather than the pursuit of his own purposes.[8] In Mraz, the court adopted the latter approach, that the officer was travelling for his employer, not for himself, and that therefore the Government was liable.[9]

■ If the cases do reveal "philosophical divergencies," as was thought by the Tenth Circuit, with one view being more liberal toward plaintiffs seeking to hold employers liable for torts

8. This difference in attitude in applying the doctrine of *respondeat superior* might possibly stem from differences of opinion as to the justice or desirability of the doctrine itself, with those out of sympathy with the idea of such "liability without fault" being inclined to confine the application of the doctrine as much as possible. Professor Seavey has observed, in discussing the differences toward the doctrine itself:

"* * * That the principal is made responsible for certain injurious conduct of the agent, although the principal did not intend it and was not negligent in failing to foresee it or to control the agent, is said to make the doctrine unjust, and a number of unkind remarks have been made about its ancestry and *raison d'etre. * * *"* (Seavey, Speculations As To 'Respondeat Superior', Harvard Legal Essays (1934) p. 433).

9. For additional federal cases concerned with this problem, see: United States v. Wibye, 9 Cir., 1951, 191 F.2d 181; Hopper v. United States, D.C.E.D.Tenn.1953, 122 F.Supp. 181, affirmed 6 Cir., 214 F. 2d 129; Purcell v. United States, D.C. N.D.1955, 130 F.Supp. 882.

committed by their servants, we think the principles announced in the New York cases clearly reflect the more liberal or broader view, as it may be called. While we do not mean to intimate what our decision would be if we were not bound by state authority, or if the accident had occurred in some other state, we are of the opinion that, under the facts in this case, the *respondeat superior* doctrine as it is applied by the New York Courts requires us to take the same position as the other federal cases holding the Government liable in similar circumstances.

Three of the leading cases in the Court of Appeals of New York involving the scope of employment problem are Riley v. Standard Oil Co., 1921, 231 N.Y. 301, 132 N.E. 97, 22 A.L.R. 1382; Clawson v. Pierce-Arrow Motor Car Co., 1921, 231 N.Y. 273, 131 N.E. 914; and Marks' Dependents v. Gray, 1929, 251 N.Y. 90, 167 N.E. 181. They are all significant because of the principles announced in dealing with problems in this area of agency law. In the Riley case, the servant had been ordered to drive his master's truck on an errand for the master to a place a few miles away from the mill where the servant normally worked. After arriving at his destination and completing his business there, the servant, instead of returning to his master's place of business, drove in the opposite direction to make a personal stop at his sister's home. Immediately after leaving his sister's house, while heading back, he met with an accident. In holding that, as the servant had finished his personal business and had started to return to his place of work, the trier of the facts could have found he was acting within the scope of his employment, and that therefore the complaint against the employer should not have been dismissed, the New York Court of Appeals said:

"A master is liable for the result of a servant's negligence when the servant is acting in his business; when he still is engaged in the course of his employment. It is not the rule itself but its application that ever causes doubt. The servant may be acting for himself. He may be engaged in an independent errand of his own. * * * He may abandon his master's service permanently or temporarily. While still doing his master's work he may be also serving a purpose of his own * * *. He may be performing his master's work but in a forbidden manner. * * * Many other conditions arise.

"No formula can be stated that will enable us to solve the problem whether at a particular moment a particular servant is engaged in his master's business. We recognize that the precise facts before the court will vary the result. We realize that differences of degree may produce unlike effects. But, whatever the facts, the answer depends upon a consideration of what the servant was doing, and why, when, where, and how he was doing it.

"A servant may be 'going on a frolic of his own, without being at all on his master's business.' He may be so distant from the proper scene of his labor, or he may have left his work for such a length of time, as to evidence a relinquishment of his employment. Or the circumstances may have a more doubtful meaning. That the servant is where he would not be had he obeyed his master's orders in itself is immaterial, except as it may tend to show a permanent or a temporary abandonment of his master's service. Should there be such a temporary abandonment the master again becomes liable for the servant's acts when the latter once more begins to act in his business * * *." Riley v. Standard Oil Co., supra, 132 N.E. at pages 97-98.

██ From the above, it seems clear that the highest court of New York does not hinge the determination of whether one is within the scope of his employment upon any single factor. We gather, from what the court says, that if there is a master-servant relationship, the question

becomes one of deciding, from the many factors involved, whose business is being furthered, the master's or the servant's. This is a broad test which the federal circuit courts in the Hinson and Mraz cases applied. It takes into consideration all elements and does not preclude the employer's liability because the employee was optionally using his own vehicle, over a route and in a manner which was not, in fact, specifically controlled by the employer. The test is not, as it may be in other jurisdictions, one that requires the particular activity at the time of the accident, i. e., the driving, to be the normal duty of the servant but is, rather, whether the master's business is then being substantially furthered.

In Clawson v. Pierce-Arrow Motor-Car Co., 1921, 231 N.Y. 273, 131 N.E. 914, the employee was driving a fellow employee's car, one that was normally used in the business with the master's knowledge. He was taking it from the place of work to the place where it was to be stored for the night. At the same time, he was taking a seamstress, having no connection with his employer's business, to her home. The New York Court of Appeals held the employer liable for the servant's negligent driving along the route.

Later another case presented the Court of Appeals of New York with the same problem of a dual purpose activity, one serving the employer and the other the employee. Marks' Dependents v. Gray, 1929, 251 N.Y. 90, 167 N.E. 181, is probably the leading New York case on this point. Although it was a workmen's compensation case, and not one dealing with the respondeat superior doctrine, Mr. Justice Cardozo, the author of the opinion, then Chief Judge of the New York Court of Appeals, cited the Clawson case as authority for the test he set forth. In addition, the Marks' case has been relied upon in later New York agency cases relating to the question of whether an employee is in the scope of his employment so as to render the master liable to third persons.[10] In that case, the employee, a plumber, was about to travel to a town in New York other than the one where he lived and worked. Upon learning of the intended trip, the employer requested him to perform some plumbing work at a house in the town of his destination. The court observed that the job to be performed was a trifling one, and would not have been undertaken at that time if the employee had not stated that he would make the trip anyhow. While so driving in his own car towards the other town, an accident happened. In holding that the employee was not acting in the course of his employment, Justice Cardozo laid down the following rule:

" * * * Unquestionably injury through collision is a risk of travel on a highway. What concerns us here is whether the risks of travel are also risks of the employment. *In that view, the decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils.* * * *

"In such circumstances we think the perils of the highway were unrelated to the service. We do not say that service to the employer must

10. The Government attempts to distinguish Marks' on the ground that it is a workmen's compensation case, and such cases are not, it is argued, appropriate sources of reference in determining *respondeat superior* liability. There are cases supporting the Government's position on this point, e. g., Conversions & Surveys, Inc. v. Roach, 1 Cir., 1953, 204 F.2d 499. However, no New York case recognizing this distinction has been cited to us. Moreover, in New York, workmen's compensation cases, involving "course of employment," and agency cases, involving "scope of employment," have cited each other interchangeably. The Clawson case, supra, (opinion also by Cardozo, J.) was relied upon in Marks' as authority for the test set forth in the latter case. Also, the Marks' case has been relied upon by later agency cases involving *respondeat superior* liability. See, e. g.: Rosenberg v. Syracuse Newspapers, 1936, 248 App.Div. 294, 289 N.Y.S. 91; Shauntz v. Schwegler Bros., 259 App.Div. 446, 20 N.Y.S.2d 198.

be the sole cause but at least it must be a concurrent course. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. We cannot draw that inference from the record now before us. On the contrary, the evidence is that a special trip would have been refused since the pay would be inadequate. *The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own.* Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273, 131 N.E. 914. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." (Marks' Dependents v. Gray, supra, 167 N.E. at pages 182–183. Emphasis supplied.)

Clearly under the rule laid down in the Marks' case, a jury would be warranted in holding the Government here liable for Major Miller's negligence. The work, no personal enterprise, created the necessity for Miller's travel. It was the occasion for the journey.

■ It is suggested that the language of Justice Cardozo is applicable only to a "dual purpose" case, *i. e.*, where the business of the employer and the personal interests of the employee are both involved, and that the rules are different in cases involving transfers from one place of employment to another. However, the Government's chief argument in the present case is that, by choosing his own automobile, Major Miller was pursuing his own interests and not those of the Government. The case is, by reason of the very argument made, one concerned with dual purpose activity, and the language in Marks' is especially appropriate. The court was there considering the problem of a servant, using his own car, going forth on a journey from one town to another. There is no suggestion that he normally took such trips for his employer, but the inference is clear that his work ordinarily was confined to the town where he resided. The opinion recognizes that if the employment had been the occasion for the trip, the servant would have been in the course of his employment. The facts in the instant case are to a degree analogous to those in Marks'. Here, too, the servant was going forth on a journey from one city to another, using his own car. However, the crucial difference is that the employment created the necessity for Major Miller's trip. It is true that Justice Cardozo's language, by its terms, is not applicable to all cases of travelling servants. It would not necessarily be applicable to an employee travelling in the morning from his home to his place of work, as the very words of the declared rule cover a "journey" or "trip" *from* the servant's place of employment.

There have been several New York cases since Marks' where servants were driving their privately owned automobiles. In Burdo v. Metropolitan Life Insurance Co., 1938, 279 N.Y. 648, 18 N.E. 2d 42, an employee of an insurance company, who had been using his personal automobile to call on policyholders, and was on his way home after his last stop, had an accident, yet his employer was held liable. In Cooke v. Drigant, 1942, 289 N.Y. 313, 45 N.E.2d 815, a collection agent of the defendant insurance company struck a pedestrian while travelling in his own automobile from the area of his work in New York City to his employer's office. It was pointed out by the court that he was not required to use his own car, that he could have used commercial transportation just as satisfactorily and had been using such transportation for several months previously, that he received no additional compensation for using his car, and that he received no reimbursement for his auto-

mobile operating expenses. However, it appeared that his employer permitted the use of this private automobile. While noting that the use of a private automobile without reimbursement was a factor to be taken into consideration, the court held that the jury could nevertheless properly find that the employee was acting in the scope of his employment. If the Cooke case presented facts sufficient to go to the jury, then, assuredly, the present case should not have been disposed of by judgment for the defendant upon summary motion.

In Kanigher v. Schwerin Air Conditioning Corporation, 1939, 280 N.Y. 751, 21 N.E.2d 520 the employee was using his privately owned car in selling products of his employer, receiving no reimbursement for its use, and the court held that the trier of the facts could still properly find that the employee was acting in the scope of his employment. In Shauntz v. Schwegler Bros., 259 App.Div. 446, 20 N.Y.S.2d 198, the servant's duties consisted of servicing electrical appliances for his employer's customers. While driving his privately owned vehicle towards his home from his last stop, he collided with the plaintiff. There was evidence that the employer knew and consented to the use of the automobile, and could have called upon the employee to make more stops, even though his normal work day was over. In deciding that the jury could find that the servant was acting in the scope of his employment, the court relied upon Marks' Dependents v. Gray, supra, and repeated the test there set forth.

■■■ Manifestly the Government's reliance upon the fact that Major Miller was using his own automobile is without support in the above cases. Although in another jurisdiction this fact might be critical, it is certainly not, as the above decisions demonstrate, a decisive element in New York for the exculpation of the employer.

It is suggested that the proper question in this case is whether the use of the particular instrumentality is within the scope of employment, and that the test of this is the employer's right to control the instrumentality used. In addition to contending that Major Miller, in choosing his own automobile, was furthering his own purposes instead of his employer's, the Government strongly relies upon the argument that the Army did not control Major Miller's driving his personal car. None of the above New York cases, however, has required that the employer shall actually control the details of the servant's driving and the route, which the Government has stressed as a necessary element for the employer's liability. In New York, the courts have considered the factor of control in determining whether an employee was a servant or independent contractor, Cooke v. Drigant, supra; Gutov v. Krasne, 1943, 266 App.Div. 302, 42 N.Y.S.2d 20, 22, affirmed per curiam 292 N.Y. 602, 55 N.E.2d 372 (applying New Jersey law but observing that the law in New York was the same). Even in this respect, however, the cases have not required the type of detailed control over the physical aspects of the driving which the Government here insists should be required even where the agent is admittedly a servant. As the court said in Gutov, where the issue was whether the particular agent was a servant or independent contractor:

"In effect, what the trial court told the jury was that liability of defendant for the driver's acts depended upon his right to control the driver's physical operation of the automobile at the time and place of the accident. This definition was too narrow. The test rather is whether the defendant had the right of general control over the driver as to how the business being carried on should be done. The question is one of the status of the driver, the ultimate issue being whether the driver was an employee or servant of the defendant, or was an independent contractor."

■■■ Our examination of the New York cases compels the conclusion that Major Miller was, at the time of the accident in that state, acting in the

scope of his employment. The New York decisions cited in support of the Government do not, we think, lead to the opposite result, as in all of them one of four features was present: (1) the case concerned the borrowed servant doctrine;[11] (2) the issue was whether the employee was a servant or independent contractor;[12] (3) he was engaged in unauthorized conduct;[13] or (4) he was obviously engaged primarily in personal business.[14] Here Major Miller,

11. Wyllie v. Palmer, 1893, 137 N.Y. 248, 33 N.E. 381, 19 L.R.A. 285, involved the borrowed servant doctrine, and the issue was not whether the servant was in his scope of employment, but rather, whether he was the defendant's servant or another's. The defendant, a fireworks manufacturer, had sold fireworks to a group putting on a display. He loaned them an employee to help conduct the fireworks display, and through the employee's alleged negligence, someone was injured by the fireworks. The court held that he was not, at the time of the accident, the servant of the defendant manufacturer, but of the group to which he had been loaned.

12. In Fritz v. Krasne, 1935, 161 Misc. 442, 291 N.Y.S. 10, affirmed 248 App.Div. 573, 288 N.Y.S. 1092, affirmed 273 N.Y. 649, 8 N.E.2d 330, the agent was a salesman of the defendant partnership, receiving no salary but commissions. He was given no reimbursement for the use of his own automobile in selling the defendant's products, was not limited to any locality whatsoever in his duties as a salesman, and it did not appear that the defendant reserved any right to give him directions as to the conduct of its business through the use of the agent's automobile. The court held that the agent was not a servant, but an independent contractor. Similarly, Dunne v. Contenti, 1939, 256 App.Div. 833, 9 N.Y.S.2d 248, involved the problem whether the agent was a servant or an independent contractor, and therefore the court, as in most cases concerned with that issue, discussed the element of control over the agent's activities.

13. O'Loughlin v. Mackey, 1918, 182 App. Div. 637, 169 N.Y.S. 835, 836, one of the cases relied upon in support of the appellee's position, was decided on the ground that: "Plaintiff failed to support the burden imposed on him of showing that Mackey's act was within the scope of any implied authority." The servant, who had never previously driven a car for the employer, and who was not licensed to do such, decided to drive an automobile, *without his employer's knowledge,* on a specific errand. In declaring this an unauthorized act, the court pointed out that if the use of the car by the servant had

been "reasonable" in the particular situation there, then there might have been implied authority to use it. See also Conigliaro v. Mills, 1941, 261 App.Div. 839, 24 N.Y.S.2d 898 (where the use of the automobile was unauthorized), and Taub v. New York Board of Fire Underwriters, 1933, 238 App.Div. 587, 265 N.Y.S. 644 (where the use of the car by the servant had been expressly forbidden.)

Natell v. Taylor-Fichter Steel Const. Co., 1939, 257 App.Div. 764, 15 N.Y.S.2d 327, affirmed 283 N.Y. 737, 28 N.E.2d 966, was concerned with an employee using his own car in the defendant's business, without any extra reimbursement for such use. The employee was carrying the plaintiff as a passenger in his automobile when there was an accident. The court pointed out that no extra reimbursement was received for the use of the automobile, but the employee received the same monthly expenses whether he traveled or not; its use was not a requirement of the corporation because of this fact; and the act of the employee in inviting the plaintiff to ride in his automobile was unauthorized. Although the court there mentioned that there was no direction or control over the employee, it cannot be said that its decision rested on this fact. The court held that for all of the above reasons the employer was not liable. The chief factors discussed by the court were the lack of reimbursement and the unauthorized act of taking the plaintiff as a passenger.

14. The three remaining New York cases relied upon by the Government all concern employees either going to work in the morning or going home from work in the evening, and the courts held that the objects of the trips were not to further their employers' business, but rather, the employees' purposes were solely personal. See: Rosenberg v. Syracuse Newspapers, 1936, 248 App.Div. 294, 289 N.Y.S. 91, 93 (employee on his way home, traversing a route having no connection with any business of his employer, and the court, relying upon the test in Marks' Dependents v. Gray, supra, held that he had abandoned his master's work and was engaged in an independent enterprise of his own); Wright v. Western

concededly not an independent contractor, was specifically authorized to travel to Canada in his automobile. He was making the trip because his employer so directed, with no personal purpose of his own. The factors indicating that his employer's interest was being furthered are many: (1) he was proceeding from Washington to Ottawa upon specific orders by the Army; (2) he was driving on a direct route, making no detour to take care of some personal affair; (3) he was specifically authorized to drive his privately owned automobile; (4) he was reimbursed at a rate of six cents per mile for using his personal car; (5) he was not on leave or pass, but on what the Army terms "travel status;" (6) his trip was expressly deemed, by his travel orders, to be necessary for his military service; (7) in spite of the Government's assertion that it lacked control over the manner in which he drove, and the route to be followed, there was some control in that he was by statute subject to discipline for reckless driving and also, since he was given only a limited amount of time to complete the long journey, the direct route he took was implicitly required. He could not possibly have driven from Washington to Ottawa in less than the two days allowed for the journey, and there was no leeway for "a frolic of his own."

On the other side are the factors that: the specific means of travel was a matter of indifference to the Army; he was using his privately owned vehicle; the Army could not, under its present regulations, have directed Major Miller to use his personal car (but clearly, under the statutory and contractual employment arrangement here, the Army had this right if it desired to exercise it by different regulations); and his normal Army service did not consist of driving vehicles, although such periodic travel to different duty stations is a normal part of military service.

As already pointed out, no one factor is controlling, but the question is, taking everything into consideration, whether the person causing the injury is the defendant's servant and whether he is, at the time of the accident, engaged in his own or in his master's business. Certainly, under the principles evolved in the New York cases, he was a servant primarily on his master's business, rather than his own. He was, to repeat, performing a specific duty under explicit directions to do so, and was reimbursed for his expenses incurred in carrying out those orders. He had no personal motive in making the trip. Therefore, we conclude that Major Miller was, according to the law of New York, acting in the scope of his employment.

Reversed and remanded.

HAYNSWORTH, Circuit Judge (dissenting).

The difference in the Court stems entirely from lack of agreement upon the nature of the question.

My brothers view the problem as one calling for an application of the dual purpose rule. In the language of Mr. Justice Cardozo,[1] they ask, "whether it is the employment or something else that has sent the traveler forth upon the journey * * *." [ 167 N.E. 182] To the extent that the existence of a question of whether the use of the particular instrumentality is within the scope of employment is recognized, it is answered without reference to the considerations relevant to a resolution of that question, but by reference to considerations which bear upon an application of the dissimilar dual purpose rule.[2]

Union Telegraph Co., City Ct.N.Y.1949, 87 N.Y.S.2d 444 (messenger boy, on his way to work in the morning, hit the plaintiff with his bicycle); Murphy v. United States, D.C.W.D.N.Y.1953, 113 F. Supp. 345 (soldier driving to his living quarters at the Y.M.C.A. in Niagara Falls from his work at a nearby army camp, and the court held that his trip was not to further the Government's business).

1. Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181.

2. It is also suggested that the particular instrumentality question cannot arise. Since, under the general employment,

If the question is one of the application of the dual purpose rule, I readily agree that the employment occasioned the travel. Major Miller, who was fatally injured in the collision, was driving his own automobile with his wife and his children as his passengers, but the trip to Ottawa, Canada, was undertaken because he had been transferred to a new, permanent duty station there. He had a personal purpose, to transport himself and his family to a new residence, but his transfer to a new duty station was the effective cause of the travel. Such duality of purpose does not remove the conduct from the compass of the employer's business. Under the dual purpose rule, the driving is properly held to be in furtherance of the business of the employer.

The right answer to the dual purpose question need not lead to a correct conclusion, however, if another question involving different considerations is present. What occasions the travel is the end of the inquiry only when the question is one of application of the dual purpose rule or arises out of some particularized deviation problem. It does not answer the question of whether the use of a particular instrumentality in furtherance of the business of the employer is within the scope of the employment of the employee.

The courts of New York have not resorted to a confusing use of language appropriate to a resolution of a dual purpose question when marking distinctions growing out of dissimilar questions.

It is the business of the employer that sends the insurance agent forth to deliver a policy to a prospect, but, as the majority recognize, it is the extent of the right of the employer to control and supervise the operation of the agent's automobile which is the criterion of decision in New York upon the question of the employer's responsibility for the agent's negligent operation of his automobile. If the agent selects his own prospects and determines his own hours of labor, nothing else appearing, New York holds the right of control insufficient to support employer liability.[3] On the other hand, the insurance company which closely supervises its debit agent who regularly uses his automobile because of the necessities of the work, is responsible for the agent's negligent operation of the vehicle.[4]

The Western Union boy, in uniform, riding his bicycle in the direction of his employer's office a few minutes before he was scheduled to start work, was bent upon service of his employer's business. He had in mind no personal objective. Notwithstanding the element of control implicit in the requirement that he re-

---

Major Miller was a servant of his employer, it is said the law gives the employer the right of immediate control of whatever instrumentality the servant selects. Having such a right of control, responsibility for the consequence of the servants' use of any such instrumentality is said to follow, I find no support for the proposition in the laws of New York or in the decisions of its courts. On the contrary, there are positive holdings that the particular instrumentality question does arise and must be met though the employee be a servant for whose physical conduct in the scope of his employment, the employer is responsible. Conigliaro v. Mills, 261 App.Div. 839, 24 N.Y.S.2d 898; Natell v. Taylor-Fitchter Steel Const. Co., 257 App.Div. 764, 15 N.Y.S. 2d 327, affirmed 283 N.Y. 737, 28 N.E. 2d 966; Taub v. New York Board of Fire Underwriters, 238 App.Div. 587, 265

N.Y.S. 644; O'Loughlin v. Mackey, 182 App.Div. 637, 169 N.Y.S. 835. The New York cases are consistent with the rule generally applied throughout the United States. See Restatement of the Law, Agency 2d, § 239. For a statement of the different question which arises under the dual purpose doctrine, see Restatement of the Law, Agency 2d, § 236.

3. Dunne v. Contenti, 256 App.Div. 833, 9 N.Y.S.2d 248. See also Fritz v. Krasne, 161 Misc. 442, 291 N.Y.S. 10, affirmed 248 App.Div. 573, 288 N.Y.S. 1092, affirmed 273 N.Y. 649, 8 N.E.2d 330 (a salesman on commission).

4. Burdo v. Metropolitan Life Insurance Co., 279 N.Y. 648, 18 N.E.2d 42; Cooke v. Drigant, 289 N.Y. 313, 45 N.E.2d 815. See also, Gutov v. Krasne, 266 App.Div. 302, 42 N.Y.S.2d 20, affirmed 292 N.Y. 602, 55 N.E.2d 372.

port to work with his bicycle and in uniform, Western Union was held not responsible for his negligent operation of the bicycle.[5]

There may be some analogy between the going-to-work cases and transfer cases. In each case the employee's travel is for the sole purpose of presenting himself at the place of work.

Of more immediate moment is the fact that New York does recognize the rule that a servant acting in furtherance of his master's business, nevertheless, may be outside the scope of his employment if he utilizes an instrumentality which was not contemplated by the employment and which was not essential to performance of the work, or the use of which was excepted from the general right of the employer to control the physical conduct of the servant. In at least three cases, New York courts have held employers not responsible for injuries inflicted by automobiles negligently operated by their servants in furtherance of the business of the employer because the servant was not employed to drive automobiles,[6] because use of the servant's automobile was unnecessary in the light of other transportation provided by the employer[7] or was both unnecessary and in violation of the employer's command.[8] In Natell v. Taylor-Fichter Steel Const. Co.,[9] an employee whose physical conduct was clearly subject generally to the control of the employer and who, with an expense allowance, was driving his own car in furtherance of his employer's business was held to be acting outside the scope of his employment because the selection of the means of transportation was left to the employee and was determined by consideration of his personal convenience.

In all four of these cases there was a concurrence of the two elements the majority finds controlling and decisive. Each employee was a servant subject generally to the detailed control of the master. Each was acting in furtherance of the master's business; it was the business of the employer which occasioned the travel. In each instance, however, the New York courts, applying the particular instrumentality rule, held the employer not responsible for injuries inflicted as a result of the negligent operation of the automobile.

Since we are referred to nothing which questions in any way the authority in New York of these four cases, if we are to follow New York law, not make it, I cannot concur in their rejection or agree that our inquiry goes no further than a finding that the servant was engaged in the business of the master.

Nor can I find in New York's conventional treatment of deviation cases, dual purpose problems and questions of the status of insurance debit agents, repair and servicemen and salesmen, all of whom were regularly driving automobiles because of the necessities of the business, any indication that the New York courts have embraced novel doctrine or would no longer follow what they have repeatedly held. Each of the New York cases upon which the majority primarily relies seems consistent with prevalent notions and find abundant support in the Agency Restatements. Those cases are briefly

5. Wright v. Western Union Telegraph Co., City Ct.N.Y., 87 N.Y.S.2d 444. New York follows the conventional rule that travel between home and office is not a part of the employment. Rosenberg v. Syracuse Newspapers, 248 App.Div. 294, 289 N.Y.S. 91; Murphy v. United States, D.C. W.D.N.Y., 113 F.Supp. 345. Of course, if one is employed to work out of his home, his home may be treated as his office. Bennett v. Marine Works, 273 N.Y. 429, 7 N.E.2d 847; Burdo v. Metropolitan Life Insurance Co., 279 N.Y. 648, 18 N.E.2d 42; Shauntz v. Schwegler

Bros., Inc., 259 App.Div. 446, 20 N.Y.S.2d 198.

6. O'Loughlin v. Mackey, 182 App.Div. 637, 169 N.Y.S. 835.

7. Conigliaro v. Mills, 261 App.Div. 839, 24 N.Y.S.2d 898.

8. Taub v. New York Board of Fire Underwriters, 238 App.Div. 587, 265 N.Y.S. 644.

9. 257 App.Div. 764, 15 N.Y.S.2d 327, affirmed 283 N.Y. 737, 28 N.E.2d 966.

summarized in the footnote,[10] and need not be discussed at length here. With one exception, they do not illuminate the question which I think should be met.

10. In Riley v. Standard Oil Co., 231 N.Y. 301, 132 N.E. 97, 22 A.L.R. 1382, a truck driver had been sent to pick up a load of paint in a freight yard. There, he saw some loose wood, of which his sister was in need. He threw this wood upon his truck, loaded the paint and drove away from the direction of his master's mill to his sister's home. After delivering the wood at his sister's house, he drove directly in the direction of his master's mill with the loaded paint, having no other purpose than its delivery as he was ordered. En route, but before repassing the freight yard, the accident occurred. The Court of Appeals held that the deviation was over and the truck driver had re-entered his master's employment.

In Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273, 131 N.E. 914, the servant intended a deviation, but it had not yet commenced. He was a chauffeur driving one of the defendant's demonstrators to a garage owned by the defendant where it was to be stored for the night. En route, he was directed by a superior to drive a seamstress, employed in the superior's home, to her residence, a short distance beyond the garage where the automobile was to be stored. The accident occurred as the chauffeur proceeded directly toward the garage. The fact that he intended to pass the garage when he reached it, deliver the seamstress to her home and then return to the garage, did not establish a departure from the master's business at the time and place of the accident.

In Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, a workmen's compensation case, a plumber's helper undertook a trip for personal reasons. Since the trip was to be made, the plumber asked his helper to do a small job in the town to which he was going. The job was not large enough to justify the trip. Since his personal reason, not the job, sent him on his way, the Court of Appeals held he was acting outside the scope of his employment.

In Burdo v. Metropolitan Life Insurance Co., 279 N.Y. 648, 18 N.E.2d 42, an insurance agent living in Saratoga Springs was required to work a debit route, much of which was in neighboring towns and hamlets and in the country remote from bus lines. Without the use of his automobile, he could not effectively discharge these duties and he was reimbursed for the use of his automobile whenever he went outside Saratoga Springs. On the particular morning, he left his home, collected premiums from some fifty policyholders in other towns and hamlets and in the country, and was returning in the evening from his last call to his home when the accident occurred. The insurance company exercised extensive control over him and since he worked his route out of his home, the employer was held responsible.

The closely supervised debit agent in Cooke v. Drigant, 289 N.Y. 313, 45 N.E. 2d 815, used his own automobile and was proceeding in it from his debit territory to the office of the insurance company to which he was required to report at the time of the accident. Public transportation was available and was a reasonable alternative for the particular trip. A verdict for the injured plaintiff was set aside by the trial judge, and the Appellate Division affirmed, each apparently upon the ground that the instrumentality used by the agent was so foreign to his employment that its use was outside the scope of that employment. The Court of Appeals reversed, holding first that the close control and supervision showed that he was not an "independent contractor." The Court of Appeals declared that the question of scope of employment was a very close one. It said that the fact that the debit agent was not required to use his automobile on this trip and was not reimbursed for its expense indicated its use was outside the scope of employment, but that this was outweighed by a combination of three circumstances: (1) the insurance company knew the agent used his automobile, (2) it required that he obtain liability insurance in connection with its use, and (3) the duties of soliciting new business, which it imposed upon him, required the use of an automobile. The court concluded that, at least by implication, the agent was required by his employer to use his automobile. It follows, of course, that if the employer requires the use of a particular instrumentality, its use in the business of the employer is within the contemplation of the employment.

In Kanigher v. Schwerin Air Conditioning Corporation, 280 N.Y. 751, 21 N.E.2d 520, a reporter's summary discloses the fact that the employee was a commission salesman who used his own automobile in calling on prospects, but reveals none of the detail of his duties or of his use of the automobile. The trial judge dismissed the complaint. The Appellate Division affirmed without opinion. The

In each of the New York cases relied upon by the majority, the court used language appropriate to a resolution of the question with which it was confronted. Such language is conventional in the context in which it was used, and should not be considered out of that context; at least, if disembodied language is to be applied to a dissimilar question, it should not be regarded as controlling. In one case it may be quite enough to say the employee was or was not engaged in the business of the employer; in another, the fact that he was may be beside the point.

Any generalized expression of the rule —that a master is liable for the torts of the servant committed while engaged in furthering the business of the master— necessarily ignores the exception. Courts have frequently declared hearsay evidence inadmissible without enumerating the exceptions, but the same court readily recognizes the exception when the question in the case demands it. The exceptions here are not so numerous as are those to the hearsay rule, but the exclusion of the use, under certain circumstances, of particular instrumentalities is not the only exception. Motivation of the immediate act which causes the harm, though the actor be generally engaged in furthering the business of the employer, may call for the application of another exception in New York [11] as in other jurisdictions, generally.[12] New York's very general statement of the basic rule, when general statement is appropriate, should not be construed to preclude the exception which New York recognizes explicitly and affirmatively.

The real question which I think should be answered, under Natell and the other New York cases excepting the use of a particular instrumentality from the employer's control and responsibility, is the relation of the particular instrumentality, Major Miller's automobile, to the employment. This involves the right of the Army, in its role of employer, to control its operation on this particular trip.

When an employee whose physical conduct is subject to the control of his employer, uses his own car in the business of the employer, the traditional approach has been to attribute to the employee,

---

Court of Appeals reversed, per curiam, saying merely, "There was a question of fact as to employment."

In Schauntz v. Schwegler Bros., 259 App.Div. 446, 20 N.Y.S.2d 198, a serviceman installed, repaired and serviced electrical equipment sold by his employer. He used his own automobile in which he carried the necessary tools and equipment. While out on jobs he would sometimes receive phone calls directing him to other jobs at other places, as he did on the afternoon in question. When done with all the jobs for the day, he could return to his home, but remained on call until 11:30 at night, and, for the purpose of such calls, required his automobile and the tools and equipment which he carried in it. On the particular day, he completed the last job on which he had current instructions about 9:00 o'clock in the evening, and proceeded toward his home, where, after arrival, he would remain on call for at least two more hours. The accident occurred as he was on his way to his home.

In Gutov v. Krasne, 266 App.Div. 302, 42 N.Y.S.2d 20, affirmed 292 N.Y. 602, 55 N.E.2d 372, the employee was an outside salesman who used his own automobile in the employer's business without being reimbursed for his expense. The testimony showed that the defendant controlled the detail of the work and its handling; but there was no showing that the employer ever exercised any control over the manner in which the employee drove his own automobile. The court held the employer responsible, saying that it was unnecessary to show specifically that he had exercised control of the physical operation of the automobile, for it appeared that he did retain the general right to control the manner in which the business was handled and conducted.

The problem here was not presented by any of these cases, excepting only Cooke v. Drigant. In that one case, the court was concerned with the present problem. Its concern with it, its treatment of it, are at odds with the contention that a correct answer to the dual purpose question also answers the question here.

11. De Perri v. Motor Haulage Co., 185 App.Div. 384, 173 N.Y.S. 189.

12. Restatement of the Law, Agency 2d, § 235.

the owner of the vehicle, the right to control its use unless the circumstances of the employment support an inference that he had surrendered that right to his employer. Judge Magruder has stated the approach: [13]

"*   *   * These cases recognize that a man like Sevigny, though in the general employ of defendant, may nevertheless be an independent contractor, not a servant, in the operation of his own car, even though, by permissive arrangement with his employer, he is using the car on company business. This result is not varied by the fact that the driver may at the time be transporting property of the employer. *   *   * It is the normal presumption that the right to control as to the detailed operation of the car is an incident of proprietorship; and to render the general employer liable on the doctrine of *respondeat superior* there must be some evidence warranting the inference that the owner, while permissively using his own car on company business, has yielded up to his employer this right to control speed, route, and the other details of operation. If the evidence warrants such an inference, it does not matter that the employer may not in the particular case have exercised the right of control thus accorded to him. *   *   * But it cannot be inferred that there was any such transfer of the right to control from the mere fact that the general employer may have agreed to reimburse the employee at so much per mile to the extent that the employee may use his own car on company business. *   *   * "

In its application in Massachusetts, the rule is very strict,[14] much less so in New York and most of the other states. Still the general rule is that the employer will not be held responsible for the negligent operation of the employee's automobile unless something more appears than the bare fact of its use on that one occasion for some purpose related to the employer's business. That this is the rule in New York is manifest in the opinion of the Court of Appeals in Cooke v. Drigant.[15] There it was said that the circumstances surrounding the use of the vehicle on the occasion of the injury indicated its use was outside the scope of employment. The court found, however, that the presumption that the employee had retained the right to control the operation of his automobile was overcome by a combination of three facts: (1) that the business of the employer regularly required the use of the employee's automobile, (2) the employer knew of its use, and (3) had required the employee to obtain liability insurance upon it.[16]

That the employee has transferred to his employer the right to control his operation of his automobile in the employer's business need not be shown in New York by direct proof of the fact. It may be inferred from the circumstances of the employment, the nature of the control generally exercised by the employer and the necessities of the employ-

13. Conversions & Surveys, Inc. v. Roach, 1 Cir., 204 F.2d 499, 501.

14. See, for instance, Gladney v. Holland Furnace Co., 336 Mass. 366, 145 N.E.2d 694.

15. 289 N.Y. 313, 45 N.E.2d 815.

16. Since the Court of Appeals had determined that the employee was a servant, not an independent contractor, and was using the automobile in the employer's business, the court would never have reached the scope of employment question if the rule suggested by the majority was recognized in New York. The court cited Comment b under § 239 of the Restatement of Agency and avoided the result of the rule only because of the combination of the three factors, particularly the fact that performance of the duties the employer required of him, necessitated his use of his automobile. Clearly the court recognized the principle of § 239 of the Restatement, and, as clearly, dealt at length with the question which arises here.

er's business which occasion the use of the vehicle.[17]

It is significant that in every case to which we have been referred, in which a New York court has held the employer responsible, the ordinary business of the employer necessitated the regular and routine use of the employee's automobile. This is in contrast to the single use by Major Miller of his automobile, and that for the purpose of transporting himself, his wife and his children to a distant city for the purpose of establishing their residence there. It is in contrast with the New York cases which held the employer not responsible when the employee used his automobile on a single occasion in the employer's business but because of the convenience of the employee rather than the necessities of the employer's business.[18]

So far as appears, Major Miller had never been required by the Army to drive his own automobile or any other vehicle. It does not appear that any duty he owed the Army required him to drive at any time. It does appear that his use of his own automobile on this occasion, rather than available public transportation, served no purpose of the Army. When moving himself and his family to a new residence in Ottawa, he must have wished to take with him the family automobile. At least, the choice to take it or not was his, though when he made it, the Army did not undertake to circumvent his personal purpose. Neither the orders of the Army, nor its business, required the use by Major Miller of his automobile on this, or any other, occasion.

It seems clear, therefore, that Major Miller's family automobile was unrelated to his employment or to his conduct of the business of his employer. Under the law of New York, which governs our decision,[19] I see no escape from the conclusion that its use on this single occasion for his personal purpose was outside the scope of his employment, not because his transportation of himself to Ottawa was not occasioned by the employer's business, for it was, but because his selection of the means of transporting himself and his family to their new residence was unrelated to the employer's business.

If there were no other indication of New York's approach to the problem, Natell v. Taylor-Fichter Steel Const. Co.[20] should point the way. Since I read it somewhat differently from the majority, some comment seems appropriate.

There the employee was an officer of a construction company specializing in bridge building. He received a monthly expense allowance of $500 to cover his travel and other expenses in serving the business of his employer. He left New York City, where the principal office of the employer was located, in his automobile and drove to North Tonawanda, New York, where he stayed for approximately two weeks, checking upon and supervising the construction of two bridges, projects of his employer. The amount of his monthly expense allowance and the nature of the employer's business suggest that such travel must have been frequent and frequently accomplished more conveniently by private automobile than by public transportation. It appears that some earlier trips to North Tonawanda had been made by train, but others had been made in the employee's automobile, and this the employer knew. Nevertheless, the New York Court of Appeals affirmed a reversal of a judgment against the employer upon the ground that the employee, while driving his automobile on the return trip from North Tonawanda to New York, was outside the scope of his employment.[21]

17. See particularly Gutov v. Krasne, 266 App.Div. 302, 42 N.Y.S.2d 20, affirmed 292 N.Y. 602, 55 N.E.2d 372.

18. See cases cited, footnote 2. See also Cooke v. Drigant, footnote 10.

19. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761.

20. 257 App.Div. 764, 15 N.Y.S.2d 327, affirmed 283 N.Y. 737, 28 N.E.2d 966.

21. In the Appellate Division, there was an alternate ground that he was not authorized to invite the plaintiff to ride with him. Since the Court of Appeals affirmed without opinion, it cannot be said,

Though it is plain that the employee was generally subject in his physical conduct to the detailed control of his employer and was engaged in furtherance of the employer's business at the time of the injury to the plaintiff, the court concluded that the employer had no right of control of the operation of the employee's automobile on that mission.

It is no answer to say that he did not receive a larger expense allowance when he used his own automobile than when he used other means of transportation and paid for it out of his pocket. Major Miller would not have, for he was to be reimbursed at the rate of six cents per map mile whatever means of transportation he chose. But clearly, the employee in Natell could not have claimed specific expense for use of his automobile without involving himself in grave controversy with the Internal Revenue Service, which certainly would have then questioned his receipt of a regular monthly expense allowance of $500.

It is clear that the employee in Natell was (1) a servant, (2) driving his own automobile *in furtherance of his master's business*, (3) at the expense of the employer, and (4) with his knowledge. Nevertheless, it was held that use of the automobile was so unrelated to the employment that the employer had no direction or control over it.

The courts of another state might have found in the circumstances of Natell a sufficient *relation between use of the automobile and the employment* to impose liability upon the employer. There, travel to construction sites appears to have been a regular duty of the employee. The employee on previous occasions had used his automobile in performing those duties, as the employer knew. If those circumstances had not been present, I cannot suppose that the courts which de-

cided Natell would have reached a different conclusion. Such circumstances would not have been present and the relation of the driving to the employment would have been much more remote if the employee had been a nontraveling, nondriving employee, a bookkeeper, transferred from a duty station in an office of the employer in North Tonawanda to a new permanent duty station in an office of the employer in New York City, who at the time was driving his own automobile, his family with him, from their former residence in North Tonawanda to a new residence in New York City. That is Major Miller's case. If the relation between the use of the automobile was too remote in Natell, it certainly must be so here.

The doctrine which would govern decision in the courts of New York is one of wide currency. In the Restatement of the Law, Agency 2d, following § 239, this appears:

"Comment:

"b. The fact that the instrumentality used by the servant is not owned by the master is a fact which may indicate that the use of the instrumentality is not authorized, or if authorized, that its use is not within the scope of employment. The master may authorize the use of a particular instrumentality without assuming control over its use as a master. The fact that he does not own it or has not rented it upon such terms that he can direct the manner in which it may be used indicates that the servant is to have a free hand in its use. If so, its control by the servant, although upon his master's business, is not within the scope of the employment.

"Illustrations:

\*   \*   \*   \*   \*   \*

with certainty, whether the primary, or the alternate, ground of decision in the Appellate Division was the basis of decision in the Court of Appeals. In either event, the result is hardly consistent with the suggestion that New York rec-

ognizes no exception to the general rule that the master is responsible for the torts of his servant if the servant, generally, is engaged in the conduct of the master's business.

"4. The master agrees with A, his servant, to pay for A's transportation upon public vehicles such as railway trains and street cars. As an alternative, A is permitted to use his own automobile for transportation, charging to the master the regular train fare. A is paid by the week, with indefinite hours of labor. In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. In the absence of evidence that A owes P any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment."

This doctrine was the basis of decision in this Court in Eleazer,[22] in Paly,[23] and in Sharpe.[24] It was the basis of decision in the Ninth Circuit in Chapin v. United States [25] in which the distinction between acts done within the scope of employment and those done "merely during the employment" is pointed out.[26]

22. United States v. Eleazer, 4 Cir., 177 F. 2d 914. It is true that the orders of Lt. Talley permitted a delay in reporting, chargeable as leave, and that he intended to stop for several days in Atlanta en route from his former station in Cherry Point, North Carolina to his new statin in Corpus Christie, Texas. When the collision occurred, however, he was on the direct route between the two stations, and the case was treated as if his destination was Corpus Christie, not Atlanta, and that the purpose of his travel was to report in Corpus Christie, as he had been directed. Such treatment seems clearly correct. He was headed toward Corpus Christie on a leg of his journey for the purpose of reporting there, and this business purpose, alone, was sufficient to occasion the travel. That he had a dual purpose, to go to Atlanta on leave, is immaterial. Under the dual purpose rule, the travel properly was treated in furtherance of the business of the employer. His driving was held to be outside the scope of his employment because of the particular instrumentality rule, not because of the dual purpose rule. Comment b and Illustration 4 under § 239 of the Restatement of Agency were quoted and relied upon, an irrelevancy if it had been thought he was on a frolic of his own and decision was to turn on that ground. The decision is indistinguishable from this case.

23. Paly v. United States, 4 Cir., 221 F.2d 958, affirming D.C., 125 F.Supp. 798. I do not understand decision there to have turned upon any finding that the serviceman's use of his automobile to attend the funeral, as he was ordered, was unauthorized. The practice was for official military escorts to ride with the body in the hearse. Here it was known that the hearse had left before the orders were received, but the serviceman was instructed to proceed to Baltimore under orders which required the travel with a right of reimbursement for his expense. The orders did not specify the means of travel. At least in this court it was assumed that use of his car was permissive, but not required. Decision in this court was rested squarely on Eleazer and Sharpe.

24. United States v. Sharpe, 4 Cir., 189 F.2d 239. Sergeant Thompson was a paratrooper. His company was being transferred from Fort Bragg, North Carolina, to Elgin Field, Florida, a distance of 750 miles. Some of the company were to be transported by truck; others by plane, while Thompson and a few others who owned private automobiles obtained permission to travel independently in their own vehicles. These were briefed on the best routes and were told they could rejoin their fellows who were traveling by truck at Forts Gordon and Benning and there obtain accommodations en route. To legalize their status, these independent travelers were given passes, not for the purpose of going upon frolics of their own, but to avoid technical absence without leave as they proceeded directly to the new duty station there to report at the appointed hour. Sergeant Thompson was engaged in this travel, in compliance with the requirement that he report at Elgin Field, when the accident happened in South Carolina. He was discharging his duty in connection with the transfer no less than was Major Miller here. Except that he received no mileage allowance, the decision is indistinguishable from this case.

25. 258 F.2d 465.

26. See also: Jozwiak v. United States, D.C.S.D.Ohio, 123 F.Supp. 65; McVicar v. Union Oil Co., 138 Cal.App.2d 370, 292 P.2d 48; Holdsworth v. Pennsylvania Power & Light Co., 337 Pa. 235, 10 A.2d 412.

It may be that the laws of New Mexico [27] and of Georgia [28] require a different answer when the act is done in those states. If the difference between the Circuits be conceptual,[29] I see no reason to depart from the approach repeatedly taken by this Court until higher authority shall have settled the conflict. More significantly, when it appears that governing state decisions recognize that an employee using his own automobile in his master's business under circumstances comparable to these is not acting within the scope of his employment, we have no choice but to apply the state rule as the state court does.

Some effort is made to put a special gloss on military transfers. This calls for final comment.

The "orders" transferring a military officer, or a governmentally employed civilian for that matter, are more formal than comparable directions of a private employer. This stems from the character of the employer, but there is no distinction in the effect of such directions upon the employee or in the relation of his travel to the employment. In either instance, final commands must be obeyed if the employment is to continue.[30]

By the addition of the letters "T D N" to Major Miller's travel orders, the issuing authority certified that "the travel directed is necessary in the military service." This certification was solely for the benefit of Major Miller. Without it, he could not obtain reimbursement for his travel expense. It added nothing to the authority of the order, and affects the character of the travel only as it shows that he was to receive reimbursement for his travel expense. It is entirely comparable to a promise by a private employer to reimburse an employee for the cost of transporting himself and his family to another city in which his new, permanent duty station is located.

Finally, it is suggested that military police regulations reveal the Army's right to control the details of Major Miller's driving and disclose its exercise.

This contention appears to have influenced the decision in Hinson [31] and of the majority here. It was rejected as immaterial in Chapin.[32] It is based upon a fact which has been present all the while, but seems never to have been noticed, though it hardly could have been unknown, by any court until the Courts of Appeals for the Fifth and Ninth Circuits recently did notice it, with different results.

The Army has jurisdiction, concurrently with civil authority, to try and punish its own personnel for the commission of crimes. The Uniform Code of Military Justice proscribes such offenses

27. United States v. Mraz, 10 Cir., 255 F.2d 115.

28. Hinson v. United States, 5 Cir., 257 F. 2d 178.

29. Judge Murrah in Mraz (footnote 27) suggests that it is, as do the majority here. Well it may be. As suggested at the outset, the difference seems to be in the definition of the question. When the question I think crucial is faced, as it has been in the past in this Circuit, one result follows: If the question is phrased in terms of the dual purpose rule, the United States would have been held responsible in each one of these cases. This is graphically illustrated by the cases in the Ninth Circuit. In United States v. Kennedy, 9 Cir., 230 F.2d 674, the crucial question was conceded or not raised. Approaching the facts in terms of the dual purpose rule, the court proceeded inevitably to the conclusion that the United States was responsible. Later, in Chapin v. United States, 9 Cir., 258 F.2d 465, when the crucial question was raised, the court reached the opposite conclusion. In doing so, it recognized that the two cases are indistinguishable on their facts; in the first case the court answered one question with one result; in the next, a different question with a different result.

30. It is not suggested that distinctions should be drawn between those military men whose service is involuntary and those who are free to resign. It does not appear that Major Miller's service was involuntary.

31. Hinson v. United States, 5 Cir., 257 F.2d 178.

32. Chapin v. United States, 9 Cir., 258 F.2d 465.

as reckless driving and murder, among many others.

The exercise by the Army and Navy of police authority over their own personnel has a long history, which need not be elaborated here. The jurisdiction's birth and retention involve many complicated considerations, including the need of orderly procedures when civil authority is absent or inoperative, the need of the military to be relatively free from interference by civil authority with its personnel, and the release of civil authority from the burden of policing military personnel when that burden is onerous.

Such considerations bear upon the military's governmental function, not upon its function as an employer. They apply whether the individual subject to them is at work or play and without regard to the duties or the rights which spring from an employment relation. The officer on leave driving his girl down lovers' lane is subject to the same proscription against reckless driving as the military courier making his rounds in a military vehicle.

In applying the Congressional direction that the United States shall be liable in tort actions to the extent a private employer in similar circumstances would be responsible, we necessarily discriminate between what the United States does in its governmental capacity and what it does in its role of employer.

Of course, the police regulations do not control the driving so long as it is within the broad limits of the law. When he starts, where he stops, what route he takes, who goes with him, at what pace he proceeds and what diversions he pursues en route, these are all left to the individual. As employer, the only requirement of the Army is that he be at the appointed place at the appointed hour, and time allowances are liberal. As policeman, the Army's only requirement is that he observe the law. This is not that detailed control of the manner and the means by which the work is to be accomplished which has been regarded as the basis of vicarious liability.

The possible implications of this contention are intriguing. Is a judge of New York's Court of Appeals, a public servant in the highest sense, a servant of his employer in this sense when he drives from the city of his residence to Albany in order to be present at the convening of a term of his court, because New York enjoins all of its citizens not to drive recklessly? What is his status if he drives on a federal parkway under the exclusive jurisdiction of the United States? [33] Is a federal judge driving from the city of his official duty station to the city in which his court is presently to be convened a servant within the meaning of the Tort Claims Act when, en route, he travels upon a federal parkway, but is not when the police jurisdiction is exclusively that of the state?

I think the Army's police jurisdiction irrelevant to the inquiry.

Being of the opinion that New York law requires a determination that use of his automobile on this occasion was not within the scope of his employment under the rule of § 239 of the Restatement of Agency, I would ask the question which would be asked in the courts of New York and answer it as those courts have.

I would affirm.

33. See Kay v. United States, 4 Cir., 255 F.2d 476.